OVERTON, J.
 

 This is a suit to recover $1,645, with 8 per cent, interest thereon from June 14, 1920, and 10 per cent, additional as attorney’s fees, for the alleged delivery ofl freight, consisting of threshing machinery, to the firm of Beraud & Le Blanc, without the surrender of the bill of lading, or without notice to plaintiff, and without obtaining the purchase price of the machinery or any satisfactory settlement thereof. The suit was instituted against the New Orleans, Texas & Mexico Railroad and the Texas & Pacific Railway Company. The district court rejected the demand against the New Orleans, Texas & Mexico Railroad, but cast the Texas & Pacific Railway Company for the amount of plaintiff’s claim. No appeal was taken from the judgment in favor of the New Orleans, Texas & Mexico Railroad, but the Texas
 
 &
 
 Pacific Railway Company appealed to the Court of Appeal. On appeal, the judgment of the trial court against the Texas & Pacific Railway Company was affirmed.
 

 The litigation grows out of the following facts: W. D. Beraud and Charles J. Le Blanc, composing the planting firm of Beraud & Le
 
 *477
 
 Blanc, on January, 14, 1920, ordered certain machinery for threshing rice from the Twin City Company, of Minneapolis, for shipment on or about May 1, 1920, to Thibodaux, La. The order, which by its acceptance became the contract between the parties, fixed the purchase price of the machinery at $1,645, to be evidenced by a promissory note for that amount, payable October 1, 1920. The contract also provided that the company might reserve title to the machinery, presumably as security for the purchase price, and also that the note for the purchase price should be secured by chattel mortgage on the machinery sold, or by trust deed, as the company might require, executed on the company’s blanks. That instrument also provided that the settlement papers should be sent to the Commercial & Savings Bank, of Donaldsonville, La., where Le Blanc, a member of the purchasing firm, who was also an agent of plaintiff, resided.
 

 The Twin City Company, to whom the order was given, had an agency at Dallas, Tex., known as the R. B. George Machinery Company, the plaintiff herein, which had a branch office at Crowley, La., conducted by B. L. Dillingham. On July 27, 1920, the machinery was shipped from the branch office at Crowley, La., in car initialed IC, and numbered 69989, over the New Orleans, Texas & Mexico Railroad Company, as the initial carrier, consigned to the order of the R. B. George Machinery Company, the shipper and the plaintiff herein. The person to be notified was Charles J. Le Blanc, and the place where he was to be notified was Donaldsonville, La. The destination of the shipment was Lafourche Crossing, a point about three miles from Thibodaux,
 
 La.
 

 In some way the shipment reached Donaldsonville over the Texas
 
 &
 
 Pacific Railroad. The agent for that road notified Le Blanc of its arrival. Le Blanc, a few days later, got in touch with Dillingham, plaintiff’s agent at Crowley, and advised Mm of the error in the shipment. Dillingham replied that a Mr. Brewerton, living near Donaldsonville, had purchased a similar machine, but had not received it, and to let Brewerton have the one erroneously shipped, and that he, Dillingham, would ship Le Blanc’s firm another át once. Le Blanc got into communication with Brewerton, and learned from him that he had received his that day. Le Blanc then directed the Texas
 
 &
 
 Pacific Company’s agent at Donaldsonville to ship the macMnery to Thibodaux, and notified Dillingham at once what he had done, and that Brewerton had received his machine. Dillingham replied that he had shipped Beraud
 
 &
 
 Le Blanc another threshing machine, and that he could not then stop the shipment.
 

 The bill of lading for the second shipment was, like the first, an order bill of lading, by which the machinery was consigned to the order of plaintiff, notify Charles J. Le Blanc. The macMnery shipped under it was in all respects similar to the machinery shipped under the first bill. However, the bill, unlike the first one, stated the destination to be Donaldsonville, La., instead of Lafjourche Crossing. The car, as shown by the bill in which the shipment was made, is described . as initialed La. M. S. C., No. 644. The bill is dated August 5, 1920, or nine days later than the first bill.
 

 In due course, the second shipment reached Donaldsonville, and the first one, after Le Blanc had directed that it be sent to Thibodaux, reached that destination. The second shipment, under directions from Dillingham, was returned to Crowley, the point of origin, and was there received by plaintiff 'in good condition. A few days after the first sMpment reached Thibodaux, Beraud, the senior member of the firm of Beraud & Le Blanc, the purchasers of the machinery, so the agent of the Texas & Pacific Railway Company testified, presented to him a bill of lading and
 
 *479
 
 asked for the machinery. Beraud died before the trial of this suit, and therefore his version of what occurred is not before us, nor does it appear how he obtained possession of the bill of lading. The agent, however, testified that he called Beraud’s attention to the fact that there was a difference between the initialing and numbering on the car described in the bill of lading presented and on the car in which the shipment was received, and that Beraud suggested that the shipment must have been transferred to another car, and said that the machinery was the machinery he had been expecting. The Texas & ■Pacific Railway Company thereupon, through its agent, delivered the machinery to Beraud, collected the freight, and had him receipt for the shipment, without requiring anything more of him, the railroad not having been charged with the duty of obtaining the execution of the settlement papers, and not having known anything of these papers.
 

 While the machinery delivered was the machinery ordered by Beraud & Le Blanc, yet the bill of lading, said to have been presented, was not the bill of lading for that shipment, but was the bill for the second shipment. Moreover, that bill, like the first bill, showed that the shipment was consigned to the order of plaintiff, and was not indorsed by plaintiff.
 

 The contract for the purchase of the machinery, as we have said, provided for the execution of settlement papers. It does not appear very satisfactorily what papers, if any, were sent to the bank along with the bill of lading for the first shipment, or whether the bill of lading for that shipment was sent to a bank. The cashier of the bank at Donaldsonville, to which bank it is said the papers were sent, does not recall what papers were sent his bank, and the evidence of the cashier of the bank at Donaldsonville, whose bank is said to have received the papers from the Donaldsonville bank, is to the same effect. The evidence of Dillingham, who was attend- : ing to the matter for plaintiff, is not before us. A commission was issued to take his evidence in California, but the commission was never executed, because it was learned, it is said, that he was dead. There is a letter in the record, apparently written by Dillingham, who was attending to the matter for plaintiff, dated seven days after the first shipment, and addressed to the bank at Donaldsonville, in which Dillingham states that he incloses the settlement papers, and in which he requests the bank to collect the draft, referring to a draft inclosed, and to have the notes signed and the mortgage executed. There is also a telegram in the record from plaintiff, addressed to the bank at Donaldsonville, re-' questing it to forward the settlement papers to the bank at Thibodaux. The circumstances indicate that this letter and the telegram reflect what was actually done. Le Blanc testified that when the bank at Thibodaux notified him that the notes had been received that his firm was nearly through threshing, and was then about bankrupt, and therefore that the indebtedness was not paid. The notes were never signed, nor was the chattel mortgage ever executed.
 

 About six months after the Texas & Pacific Railway Company delivered the machinery to Beraud & Le Blanc, plaintiff filed suit against that firm, and the individual members thereof, to recover of them the purchase price of the machinery sold, together with interest and attorney’s fees thereon. The cause of action was based directly on the contract of purchase, which contract was made a part of the petition, and the vendor’s lien on the property sold was claimed. In that suit plaintiff reserved its rights against both railroads, made defendant herein, by allegation to that effect.
 

 About 17 months after the foregoing suit was filed, and nearly 2 years after the machinery was delivered, plaintiff dismissed the
 
 *481
 
 suit against Beraud & Le Blanc and instituted the present suit, to recover, as we have said, of the New Orleans, Texas & Mexico Railroad and the Texas & Pacific Railway Company, the value of the machinery delivered to Beraud & Le Blanc, as damages for the unauthorized and improper delivery of it. The Texas & Pacific Railway Company has filed in its answer a plea to the effect that plaintiff is precluded and estopped from pursuing the present demand against it, by reason of plaintiff’s having instituted the foregoing suit against Beraud & Le Blanc on the contract of sale to recover the purchase price of the machinery.
 

 The Texas & Pacific Railway Company should not have delivered the machinery to Beraud & Le Blanc. The shipment was made under a bill of lading with the shipper’s order named as consignee. The bill was therefore negotiable. The bill, said to have been presented, when delivery was requested, was not the bill under which the shipment was made. Not only was delivery made on presentation of the wrong bill of lading, but the bill, said to have been presented, was also to the shipper’s order, and was not even indorsed by the shipper. Therefore the railroad acted without warrant of law in making delivery,„ and made itself liable to any one having a right of property or possession in the goods, which, in this instance, inclxxdes the shipper, who is the plaintiff herein. See sections 12 and 13 of Act 91 of 1912, the Uniform Bills of Lading Law.
 

 While the Texas & Pacific Company should not have delivered the machinery on the bill of lading presented, still, when the case is viewed from certain aspects, it is not readily seen what particular injury, possessing substance, plaintiff suffered from the delivery, as made. The machinery was intended for Beraud & Le Blanc. That is why it was shipped. The intention was that this firm should receive the inachinery without delay. This is shown by the haste in which plaintiff made the second shipment. It is true that the contract of purchase provides for the execution of settlement papers, and that these were never executed. One of these papers was a note to be signed. The signing of the note would not have placed plaintiff, under the circumstances of this case, in any better position than it now is, because the indebtedness apparently was not disputed, and, according to the only evidence in the record on the subject, that of Le Blanc, both he and Beraud were practically bankrupt, not long after the delivery — that is, when they had about completed their threshing. Another settlement paper, accepting plaintiff’s contention as correct, was a chattel mortgage, to be executed. A chattel mortgage, it must be confessed, is better security, as a rule, than a vendor’s privilege on personal property, to which latter plaintiff was entitled, at least, upon the delivery of the property. But, so far as appears, in this instance, the vendor’s privilege was of as much service to plaintiff, had it cared to enforce- it, as a chattel mortgage would have been, for it does not appear that defendant parted with the property, or that a situation arose where a chattel mortgage woxild have protected plaintiff any better than a vendor’s privilege. Still another settlement paper is said to have been a draft. The only cash that Beraud & Le Blanc were to pay on receiving the machinery, according to the contract, was the freight, and the .evidence is to the effect that Beraud paid that at the time- of delivery.
 

 We
 
 make the foregoing observations merely for the purpose of showing that the injury suffered by plaintiff by the unauthorized delivery of the property to Beraud & Le Blanc ■was largely, if not entirely, a technical injury, and not for the purpose of basing oxrr judgment on them. We propose to rest that judgment on another ground.
 

 In our opinion the plea of estoppel,
 
 *483
 
 filed by the Texas & Pacific Railway Company, should be sustained. Plaintiff bad, in the beginning, a right of action against Beraud & Le Blanc to recover the machinery or its value, because of the unauthorized delivery, if they failed to execute the settlement papers. There would have been no inconsistency between that action and the present one. Plaintiff also had the right to sue Beraud & Le Blanc on the contract of purchase for the purchase price of the machinery. Plaintiff exercised that right by bringing such a suit. That action implies that the goods were delivered, or at least tendered, to the defendant therein, and where the goods purchased were delivered without authority from the plaintiff in such action, it necessarily implies that the plaintiff adopts the delivery made, for if there be no delivery or tender of the goods there can be no recovery. That action is inconsistent with the present action, for it involves an adoption of the delivery made, whereas the present action involves a repudiation of the delivery made. Plaintiff, with all of the facts before it, pertaining to the manner of delivery, sued first, as we have said, Beraud & Le Blanc, on the contract of purchase, for the purchase price of the machinery, knowing at the time that the only delivery made was the one that was unauthorized. It therefore, impliedly at least, adopted that delivery. The election thus made was binding on plaintiff. 20 Corpus Juris, § 33, p. 38. Nor does it matter that the conflicting remedies pursued were against different persons, or that the plaintiff dismissed the first suit. 20 C. J. p. 17, § 12, E; Id. § 20, E, p. 29. Nor does it make any difference that the plaintiff, where he is in possession of all the facts, reserves the right to pursue an inconsistent remedy. 20 C. J. p. 33, § 27, J.
 

 We have examined the authorities cited by plaintiff, but do not find them pertinent. They involve consistent and concurrent actions or alternative pleas.
 

 In our view, the plea of estoppel should have been sustained.
 

 For the reasons assigned, the judgment of the Court of Appeal, under review, and also that of the district court, are annulled and set aside, and plaintiff’s demand is now rejected at its cost.