51 So.2d 617

**BROWN v. LANCASTER et al.**

No. 39841.

March 19, 1951.

J. L. Warren Woodville and A. H. Reed, New Orleans, for plaintiff and appellant.

Louis G. Lemle, H. Martin Hunley, Jr., Lemle & Kelleher, all of New Orleans, for heirs of Dr. John T. Capo, amici curiæ.

Lester J. Sarpy, New Orleans, for John R. Ruiz and Lester F. Hyman, defendants-appellees.

LE BLANC, Justice.

This is a suit for specific performance of a certain contract for the sale and purchase of real estate. The contract was entered into between the plaintiff and the defendant, Samuel B. Lancaster, on August 23, 1946. The property to be conveyed is a lot of ground in Metairie, with improvements thereon, bearing Municipal Number 150 Gruner Road.

Lester F. Hyman, in whose name title to the property stood at the time suit was filed, and John E. Ruiz, the record holder of a mortgage bearing against the property were also made parties defendant and judgment is prayed for against them asking that the sale to Hyman be declared null and void and that the mortgage in favor of Ruiz, insofar as it affects the property be also declared null and void and of no effect. .

A rather complex statement of facts led to this litigation and it becomes important to recount them at this time. This we will do as briefly as possible.

On or about March 15, 1946, the Delta Realty Company, a commercial partnership engaged in the real estate business, composed of Samuel B. Lancaster and his wife, Mrs. Joyce Witherspoon, solicited from the plaintiff, a loan in the amount of $5000.00. The loan was granted on the Lancasters giving the plaintiff two post-dated checks in the amount of $2625.00 each, one check being payable in six months and the other in one year. The two hundred and fifty dollars over and above the five thousand dollars represented a bonus which the plaintiff was to receive for having granted the loan.

The Lancasters were borrowing the money in order to construct homes on certain properties which they owned and, on April 25, 1946, they informed plaintiff that they needed an additional amount of $7000.-00 in order to complete three houses then in the course of construction. Plaintiff agreed to increase the loan and, as evidence of the increase, the Lancasters issued a post-dated check payable June 25, 1946, in the sum of $7500.00, the additional $500.00 again representing a bonus for the granting of this loan.

The check for $7500.00 was not paid on June 25, 1946 and on August 23, 1946 the parties entered into an agreement giving Brown, the plaintiff, the right to purchase certain property and the improvements thereon which resulted in the contract, specific performance of which is now being sought.

The agreement was in the form of a letter dated August 23, 1946, addressed to Delta Realty, in which Brown offers and agrees to purchase "150 Gruner Ave. on grounds measuring about as per title or as per title, for the sum of Nine Thousand Five Hundred ($9500.00) Dollars on the terms of 8000.00 Cash. Balance at Act of Sale." The letter contains various other stipulations which it is unnecessary to refer to for the purpose of disposing of the issues in this suit. At the bottom of the letter there is an acceptance of the offer on all of its terms and conditions signed by Samuel B. Lancaster.

The act of sale was never executed although plaintiff in his petition avers that he made repeated attempts to contact the defendant in regard to effecting title to the property. The agreement, however, was not recorded in the Conveyance Records of Jefferson Parish until October 1, 1946.

On October 3, 1946, the defendant Lancaster executed a mortgage on this and other property he owned in favor of Mrs. Elsa Capo, wife of Dr. John T. Capo, for $27,000.00, which mortgage was recorded on October 5, 1946. At this time there were two outstanding mortgages on the property, one in the sum of $6177.50 and the other for the sum of $2000.00. Both these mortgages were paid off with the proceeds from the Capo mortgage and part of the proceeds was also used to acquire title to an adjoining lot on which the house involved in this suit was partly built.

On April 29, 1947, Brown instituted a suit in the Civil District Court for the Parish of Orleans, against the Delta Realty Company, Samuel B. Lancaster and his wife, and their bondsman, the United States Casualty Company in which he prayed for judgment against the Lancasters in the sum of $3250.00 and further judgment against them and also against the Bonding Company, in solido, in the sum of $10,000, that being the extent of the surety company's liability on the bond, with legal interest and attorneys' fees.

In his petition in that suit, Brown set out various facts, much the same as those here recited and then alleged that in all of the said transactions, Lancaster deliberately acted with the view and purpose to defraud him out of the monies which he had advanced, in violation of the terms and stipulations of the bond which had been executed by the United States Casualty Company as surety.

On May 6, 1947, Lancaster conveyed by notarial act of sale to Lester F. Hyman, the property which is the subject of this suit for the alleged consideration of $7050.00, of which $50.00 is stated as being a cash payment and the balance represented by the assumption of the balance of the Capo mortgage note which had been reduced to $7000.00 and which was then and is now held by John E. Ruiz.

On June 11, 1947, Brown compromised his suit as against the United States Casualty Company for $2500.00. In the compromise agreement it is recited that he "releases and acknowledges satisfaction of any and all claims, demands, causes of actions whatsoever, which he has against" the surety company on their bond in favor of the Lancasters and especially any claims, demands and causes of action on account of or arising from the real estate deposits which he had made with them. The agreement also recites that Brown reserves all of his rights against the Lancasters "in the aforesaid suit filed in the Civil District Court for the Parish of Orleans to claim the balance in excess of $2500.00 from them" and that for the consideration therein set forth he transfers, sells and assigns to the United States Casualty Company $2500.00 of any and all claims, demands, causes of action which he has against the Lancasters growing out of the suit he had instituted and agrees to furnish on its re-

quest conclusive evidence of such claims, demands and causes of action.

On June 24, 1947, on motion made on his behalf, this suit of Brown's was discontinued at his costs.

In the present suit he alleges that of the purchase price in the sum of $9500.00 for the property Lancaster had agreed to sell to him, he had paid the sum of $8000.00, leaving a balance due and owing of $1500.00. He then further avers that he paid the defendant, Samuel B. Lancaster, the said balance of $1500.00 due under the said agreement, or the entire purchase price of the property, and that notwithstanding the execution of the said agreement and its recordation in the Conveyance Office and the payment of the entire purchase price, Lancaster, on May 6, 1947, sold the property to Lester F. Hyman. He alleges further that the purported mortgage dated October 3, 1946 which was assumed by the said Hyman in purchasing the property was not recorded until October 5, 1946, which was subsequent to the registry of his agreement to purchase. He avers that he believes, and therefore alleges that the sale to Hyman was a simulation intended to remove the registered title of the said property from the name of Samuel B. Lancaster and thereby. place the same beyond reach under the said agreement of sale. He finally alleges that he has always been willing and able to execute a formal act of transfer of the property and that in view of the aforesaid inscription of the said mortgage and subse-

quent sale to Lester F. Hyman, a sale to him would be of no value unless these inscriptions were annulled and cancelled.

The defendants, Hyman and Ruiz, first filed exceptions of no cause and no right of action. At the same time they each filed an answer under reservation of their exceptions. The record does not show what action was taken on the exceptions and we assume they were overruled. The pertinent part of their answers as far as their defense is concerned, is to the effect that in dealing with the property they relied upon the public records of this State and that the certificate of conveyance and certificate of mortgage in the name of Samuel B. Lancaster, failed to reveal any prior recorded sale, or agreement to sell, with respect to the property involved. The defendant, Ruiz, further pleaded in the alternative, that the person from whom he purchased the mortgage note, namely, Mrs. Elsa Capo, sold the said note for the full value thereof before maturity, when he was in good faith, and thereby became a holder in due course. That the said Mrs. Capo, acting either on her own behalf or on behalf of her husband, Dr. John Capo, warranted the payment of the said note and its security by a first mortgage on the property. In this connection he avers that they are necessary parties to the suit and he calls them both in warranty to defend him. He then sets out that if plaintiff herein had a recorded sale or agreement of sale with regard to the property in question that the same should have

appeared in the Conveyance certificate which was furnished him by Vic A. Pitre, Recorder of Mortgages and Register of Conveyances for the Parish of Jefferson, for which he was duly paid; that the said Pitre warranted the truth and correctness of the said certificate which disclosed nothing whatever bearing against the property. Accordingly he pleads that the said Pitre is also a necessary party to the suit and he likewise calls him in warranty to defend his rights herein since he is liable for whatever damages may be sustained as a result of the reliance placed on his certification. He also alleges that the said Pitre is bonded by the Fidelity and Deposit Company of Maryland for the faithful performance of all of his duties and the said bonding company is solidarily bound and liable with him for any damages, harm or injury that anyone may sustain because of failure to properly perform his duties and that therefore the said bonding company is also a necessary party and he also calls it in warranty.

Hyman, in his answer, defends his purchase of the property in the same manner that Ruiz defends his mortgage and makes the same pleas and calls in warranty against the same parties, except the Capos.

Exceptions to the jurisdiction to the Court rationae materiae and personae were filed on behalf of the Clerk of Court, Vic A. Pitre, and the Fidelity and Deposit Company of Maryland. These were maintained

in the District Court and the calls in warranty against them dismissed.

Dr. John T. Capo and his wife, Mrs. Elsa Capo, in answer to the call in warranty made on them presented the same issues as had been presented by the defendants, Ruiz and Hyman, to the effect that in taking a mortgage on the properties of Lancaster, on October 3, 1946, to secure a loan of $27,-000.00 they also acted on the faith of the public records of the State of Louisiana and relied on the certificate of mortgage which had been obtained from the Clerk of Court, ex-officio Recorder of Mortgages.

The defendant Samuel B. Lancaster filed an answer in proper person in which he denied practically all of the allegations in plaintiff's petition except to admit that he had conveyed the property to Lester F. Hyman on May 6, 1947. He avers that prior to October 3, 1946 plaintiff notified him that he would not proceed with the agreement of August 23, 1946 and it was agreed between them that the said agreement was at an end. Further, he pleads the suit which plaintiff had instituted on April 29, 1947 against him and Mrs. Lancaster and also against the surety on their bond demanding the return of his deposit made under the agreement, and which he thereafter compromised with the surety company, was an election made by him by which he was bound and that he is now without right to claim specific performance.

During the pendency of the suit and before trial, Dr. Capo died and his widow and

three major children were, on their motion, substituted as parties defendant.

The Clerk of Court and ex-officio Recorder of the Parish of Jefferson and his surety having been dismissed from the suit on their exceptions to the jurisdiction, the case proceeded to trial against the other defendants and resulted in a judgment below in their favor and against the plaintiff. The demand for specific performance against Samuel B. Lancaster was dismissed with reservation, however, to the plaintiff of any and all rights he may have against that defendant for the recovery of any money owing by him. The demands against the defendants John E. Ruiz and Lester F. Hyman were dismissed and so was the call in warranty of Ruiz against Mrs. Capo and the heirs of Dr. Capo.

Plaintiff appealed from the judgment dismissing his suit against the defendant, Lancaster. Hyman and Ruiz did not appeal from that part of the judgment which dismissed their calls in warranty.

The trial judge based his judgment on two grounds; first, that plaintiff "is not entitled to specific performance because he has failed to show that he has performed under his contract of purchase and has failed to show an offer to perform," and second, that plaintiff "has abandoned his right to claim specific performance by having assigned to the United States Casualty Company his rights under the contract because of the receipt of $2500.00 as part of the purchase price."

The first ground presents largely questions of fact involving rather serious conflicts between the testimony of the plaintiff and that of the defendant, Lancaster, and his wife. We believe that there is considerable merit in the trial judge's holding on this point but we prefer to rest the decision on the second ground which presents mostly a question of law and on which there is very little conflict in the evidence. That point involves an application by the Court of the doctrine of "The Election of Remedies" as it is known in the Common Law.

The doctrine may be said to find its counterpart under our system of pleading and practice in Article 149 of the Code of Practice under which a plaintiff is prohibited from cumulating several demands in the same action, when one of them is contrary to, or precludes another. By way of illustration the Article recites that a vendor cannot demand, "at the same time, the rescission of the sale he had made and the price for which it was made; he must decide for one or the other of the two causes of action, as the one precludes the other."

Early in our jurisprudence it was held that whilst the prohibition contained in the article is confined "in terms, to a cumulation in the same action," in spirit, "it prohibits the inconsistent demands in two distinct actions." Adams v. Lewis, 7 Mart., N.S., 400.

In later decisions the doctrine was recognized under its Common Law designation of "Election of Remedies" and in its subse-

quent development Common Law rules and principles were applied. For instance in Lowenstein v. Glass, 48 La.Ann. 1422, 20 So. 890, 891, the court relied on a statement from Common Law authority in which it is said that "an election is binding on the party making it, and he cannot afterward pursue an inconsistent remedy, though full recovery was not had in the first action." The doctrine was again so recognized in R. B. George Machinery Co. v. New Orleans, T. & M. R. R. Co., 167 La. 474, 119 So. 432, where the court cited Corpus Juris to the effect that an election having been made, it became binding on the plaintiff and it did not matter that the conflicting remedies pursued were against different persons or that the plaintiff had dismissed the first suit.

The demand made by the plaintiff Brown in his original suit which included the recovery of the deposit under his agreement of August 23, 1946, is wholly inconsistent with the remedy he pursues in this suit and, having made his election of a cause of action in the former suit, he is bound by it. He cannot now enforce the remedy of specific performance of that same agreement.

The defendant Lancaster had the right to assume that when Brown brought the other suit in April 1947 to recover from him and his surety the full amount of the loan he had made to him, the larger part of which became the deposit under the agreement to sell, he had waived his rights to specific performance of the agreement and he, Lancaster, was justified in dealing further with the property and effecting the sale which he made to Hyman on May 6, 1947.

There is authority in some jurisdictions to the effect that the mere filing of a suit by a party who holds two inconsistent remedies, on one of them, is sufficient to constitute a conclusive election. In other jurisdictions the authorities hold that there must be some advantage or benefit derived by one of the parties and some detriment or disadvantage suffered by the other, in order for the election to be conclusive. 28 Corpus Juris Secundum, "Election of Remedies", § 11, p. 1079. We find it unnecessary, however, in this case, to resolve whatever conflict may exist one way or the other because we are of the opinion that the election made by the plaintiff when he filed his first suit was one which resulted to his advantage and to the disadvantage of Lancaster. Certainly Brown was a beneficiary to the extent of having recovered the sum of $2500.00 cash against Lancaster's surety and inasmuch as he transferred and assigned to the surety company, any and all claims, demands and causes of action which he had against Lancaster growing out of that suit, Lancaster suffered at least to the extent that he may be called upon again to defend himself against the surety company in another suit brought by it against him.

The fact that Brown accepted $2500.00 from the surety company as a compromise and settlement of his claim

against it, had no effect on the conclusiveness of the election he had made. In 28 Corpus Juris Secundum, Election of Remedies, § 11 cited supra, it is stated at page 1080 that "the compromise and settlement of a suit constitutes such an election as will preclude plaintiff from thereafter prosecuting an action based upon a theory inconsistent with that on which the former action was maintained." The reservation which Brown made with regard to Lancaster, in his compromise agreement with the surety company, was to claim the balance, in excess of $2500.00, arising out of deposits made under their agreement, as well as other advances made to him. Nothing can even be implied from the reservation that he may at some later time sue him for specific performance. Knowledge of all relevant and necessary facts existed and in such case even an express reservation to take "a different and inconsistent course at a subsequent time [would have been] of no avail." 28 Corpus Juris Secundum, Election of Remedies, § 11, supra, page 1079.

On the authority cited in R. B. George Machinery Co. v. New Orleans, T. & M. R. R. Co., supra, the election which Brown had thus made in the former suit was binding on him and was in no way affected by his subsequent dismissal of that suit.

It is urged on behalf of the plaintiff that should he lose this suit he will have absolutely no recourse against anyone. That argument is suggested to the Court as a matter of equity with which this court can

only deal in the absence of any positive law on the subject. Civil Code Article No. 21. We might mention in this connection however, that it does not appear why plaintiff accepted a settlement of $2500.00 from the surety company when concededly the bond covering their liability was in the sum of $10,000.00. Moreover in the judgment rendered in this suit plaintiff has been reserved his rights to sue Lancaster for any balance that may be due him. It cannot be said therefore that he is left altogether without any recourse.

The judgment appealed from is correct and it is, for the reasons stated, affirmed at appellant's costs.