LAFIELD et al. v. UNITED STATES CAS. CO. OF NEW YORK.

Civ. A. No. 4128.

United States District Court
W. D. Louisiana, Shreveport Division.

Sept. 14, 1953.

Booth, Lockard & Jack, Shreveport, La., for plaintiff.

Cook, Clark & Egan, Shreveport, La., for defendant.

DAWKINS, Jr., District Judge.

Alleging serious personal injuries said to have been sustained by them on June 22, 1952, when they were exposed to anhydrous ammonia gas, six Louisiana citizens[1] sued defendant, a corporate citizen of New York, as the public liability insurer of Louisiana Liquid Fertilizer Company, Inc., a Louisiana corporation. Plaintiffs claim that on the date mentioned they were inside a cattle auction barn in a rural section of Bossier Parish, when they suddenly were engulfed in a cloud of the gas which defendant's insured negligently had permitted to escape from its premises next door, causing the damages for which they sue.

The action, based on citizenship diversity and being for a total of $163,824.50, is brought against the insurer alone under the so-called Direct Action statute of the State, Act 55 of 1930, as amended, now cited as LSA–R.S. 22:655. That part of the statute here applicable reads as follows:

"The injured person or his or her heirs, at their option, shall have a right of direct action against the insurer within the terms and limits of the policy in the parish where the accident or injury occurred or in the parish where the insured has his domicile, and said action may be brought against the insurer alone or against both the insured and the insurer, jointly and in solido."

This statute has been the subject of repeated attacks in both Louisiana and Federal courts by insurers, who understandably have felt it to be unfair to them. They have urged that it gives personal injury complainants the advantage of trial on disputed issues of liability and quantum by juries which naturally sympathize with, and lean toward, the injured parties. The insurers have felt aggrieved particularly by such actions in Federal courts where, unlike the situation in Louisiana courts[2], there is no appellate review of disputed facts passed upon by a jury[3].

While we are of the opinion that the Louisiana Direct Action statute does operate unfairly against insurers in the respects mentioned, that it has caused a marked increase in premium rates, and has burdened unduly the dockets of Federal District Courts in the State, all such attacks by insurers issuing policies within the State thus far have failed.

Defendant here presents a new and hitherto untested argument against plaintiffs' use of the statute. By a "speaking" motion to dismiss, it asserts that these complainants, prior to institution of this action, had filed suits against both the insured *and* insurer in the State court of Louisiana upon the same causes of action. These suits are still pending, untried and undismissed. Accordingly, defendant urges that plaintiffs, having exercised the "option" given by the statute of suit against *both,* cannot now maintain another and separate action against the insurer *alone.*

In support of this position, defendant argues that the Louisiana Legislature, by adoption of the statute in its present form, clearly intended to make the remedies granted exclusive of one another, citing Article 13 of the LSA–Civil Code[4], and a number of decisions, principally by Louisiana courts[5].

1. Two are minors, represented by their fathers, who also claim injuries.

2. Art. 7, §§ 10, 29, Louisiana Constitution of 1921.

3. 7th Amendment, U. S. Constitution.

4. Which reads: "When a law is clear and free from all ambiguity, the letter of it is not to be disregarded, under the pretext of pursuing its spirit."

5. Reeves v. Globe Indemnity Co., 182 La. 905, 162 So. 724; Miller v. Commercial Standard Ins. Co., 199 La. 515, 6 So.2d 646; West v. Monroe Bakery, 217 La. 189, 46 So.2d 122; Michel v. Louisville & N. R. Co., 5 Cir., 1951, 188 F.2d 224; Borie v. Smither, La.App., 8 So.2d 148; George Machinery Co. v. New Orleans T. M. & R. Co., 167 La. 474, 119 So. 432; Brown v. Lancaster, 218 La. 1036, 51 So.

690

■

■ We cannot agree, however, that defendant is correct. The cases cited, without here analyzing them in detail either are inapposite or are general authority for the proposition only that where two or more mutually *inconsistent* remedies are afforded by law, an election—or exercise of option—of one remedy forecloses resort to any other. We do not believe the Legislature intended to make the remedies of the Direct Action statute exclusive of each other, or that they necessarily are inconsistent. Even a literal interpretation of the statute does not justify such a conclusion.˙ Rather, it is our opinion that they are supplementary, and that the "option" granted to injured parties is to exercise any of the remedies, together or separately.

Were this not so, absurd results might follow. For example, the right to voluntary nonsuit—absolute in the State courts, and with the court's approval in federal jurisdictions—cannot be gainsaid. Would an injured person who sues the insurer alone and thereafter, for his own good reasons, enters a nonsuit followed by another action against both the insured and insurer, be held to have "elected" his remedy and thereby become barred from any other? We think not. Conversely, had he brought suit, and then voluntarily nonsuited, against both, would he thus be prevented from later suing either alone? We think not.

Again, in a case where an injured party, unaware of the existence of an insurer, has sued and obtained judgment against the tort-feasor alone, upon later discovering the insurance, would he be held to have exercised his "option" and to be barred from pursuing the insurer in court? Certainly not, especially when it is noted that standard liability policies contain a "no action" clause, sitpulating that suit shall not be brought against the insurer until final judgment first is obtained against the insured [6].

Finally illustrative is the situation where the injured party sues the insurer alone, but loses on a technicality, such as failure of coverage or lack of cooperation by the insured. Surely in such a case he would not be held to have made a binding election so as to prevent him later from pressing his rights against the tort-feasor.

Accordingly, it is our conclusion that defendant's motion to dismiss must be and it is hereby overruled.

2d 617; Lewis v. Manufacturers Cas. Ins. Co., D.C., 107 F.Supp. 465.

6. The Legislature has nullified this proviso as a defense against direct actions by requiring all insurers doing business in the State to file a "consent to be sued" before they can begin or continue to do business here. This requirement has been held unconstitutional as to poli-cies written outside Louisiana in jurisdictions according validity to the "no action" clause. Watson v. Employers Liability Assurance Corp., 5 Cir., 202 F.2d 407; Bish v. Employers Liability Assurance Corp., 5 Cir., 202 F.2d 954; Fisher v. Home Indemnity Co., 5 Cir., 198 F.2d 218; and cases cited therein.