628 So.2d 162 (1993)
BARNCO INTERNATIONAL, INC., Plaintiff-Appellant,
v.
ARKLA, INC., Defendant-Appellee.
No. 25,167-CA.
Court of Appeal of Louisiana, Second Circuit.
December 1, 1993.
Rehearing Denied January 13, 1994.
*163 Weiner, Weiss, Madison & Howell by James Fleet Howell, R. Joseph Naus, Shreveport, for plaintiff-appellant.
Blanchard, Walker, O'Quin & Roberts by James C. McMichael, Jr., Don Weir, Jr., David N. Matlock, Shreveport, for defendant-appellee.
Before NORRIS, LINDSAY and VICTORY, JJ.
VICTORY, Judge.
Plaintiffs/Appellants, Barnco International, Inc. ("Barnco"), James D. Barnes and Johnette Q. Barnes ("Barnes"), brought a breach *164 of contract action against the defendants, Arkla, Inc. ("Arkla") and Arkla Chemical Corporation ("ACC"). The defendants moved for partial summary judgment, which was granted in part by the trial court. We reverse and deny the motion.

FACTS
James D. Barnes and Johnette Q. Barnes are the sole owners of United States patent number 4,730,118 entitled "Oil Field Induction Generator System," dated March 8, 1988. An Induction Generator System ("In-Gen System") is an engineered induction generator unit that converts natural gas or other similar fuels into electricity, hopefully in a cost effective manner. The Barnes are also the sole shareholders of Barnco International, Inc. Pursuant to a licensing agreement with the Barnes, Barnco has the exclusive right to manufacture and sell the In-Gen Systems.
In 1982, Barnco decided to develop, market and patent the In-Gen System. After expending large sums of money in this effort, it realized that it did not possess the necessary funds and expertise to fully market and sell the product. Thus, in 1989, Barnco entered into contract negotiations with Arkla to market and sell the In-Gen Systems.
As a result of these negotiations, ACC, a wholly owned subsidiary of Arkla, Inc., and Barnco entered into a "Distributorship Agreement" (the "Agreement"), dated January 23, 1990. The Agreement gave ACC the exclusive right to sell and distribute the In-Gen Systems for a share in the profits derived. Under the Agreement, ACC agreed to purchase a minimum number of In-Gen Systems from Barnco during certain prescribed time periods. Agreement, Section III ¶ 3.01. If ACC did not purchase the minimum number of In-Gen Systems for a given time period, it could preserve its exclusive rights status by maintaining, during the next time interval, an adequate number of sales representatives, that were actively engaged in selling In-Gen Systems. Agreement, Section III ¶ 3.02. If ACC failed to purchase the minimum number of In-Gen Systems and also failed to maintain an adequate sales force during the prescribed time interval, Barnco had the option of converting ACC's exclusive distributorship rights under the Agreement to nonexclusive. Agreement, Section III ¶ 3.02.
Paragraph 11.01 of the Agreement also provided, in pertinent part, that:
In the event of a material breach of this Agreement, except for failure to make payments hereunder, the party desiring to terminate the Agreement shall serve written notice of such breach on the other and the party who has breached the Agreement shall have thirty (30) days following such notice to correct or remedy such breach. Failure to make payments as provided hereunder shall result in immediate termination of this Agreement.
Within a few months after the contract was signed and continuing until the contract was terminated, Barnco expressed dissatisfaction with the manner in which ACC was performing, claiming failure to exercise diligence in good faith in promoting and distributing the In-Gen Systems per the Agreement. Several meetings between Arkla/ACC officials and Barnco over the 18-month period ending in May 1991 failed to resolve their differences.
Finally, by letter dated May 31, 1991, Barnco notified ACC that the Agreement had terminated because ACC had failed to pay the balance claimed to be due for three In-Gen Systems it had agreed to purchase in the spring of 1991. Barnco's letter cited the failure-to-pay termination provision contained in paragraph 11.01 of the Agreement, specifically reserving its right to recover damages caused by ACC's alleged failure to perform under the Agreement.
On July 19, 1991, plaintiffs filed this suit against ACC and Arkla. In addition to other claims, they submit that ACC and Arkla are liable for future lost profits that they would have received had the defendants properly performed for the ten-year term of the Agreement.
On February 5, 1992, ACC and Arkla filed a motion for partial summary judgment requesting, inter alia,[1] dismissal of claims for *165 loss of future profits beyond May 31, 1991, the date that Barnco terminated the Agreement pursuant to paragraph 11.01. ACC and Arkla argued that while lost profits may be recovered for losses resulting from alleged nonperformance before May 31, 1991, they were not recoverable for any failure to perform under the Agreement after the termination date.
By judgment dated December 14, 1992, the trial court granted ACC's and Arkla's motion for partial summary judgment stating:
IT IS HEREBY ORDERED, ADJUDGED AND DECREED that the applicable law clearly provides in light of the unambiguous terms of the contract between the parties that plaintiffs' claims for damages are limited to those losses which occurred as a result of the alleged breach by the defendant or defendants on or prior to May 31, 1991 as fully set forth in defendants' briefs which are adopted herein on that issue only, and to this extent only, the Motion For Partial Summary Judgment is granted.
Plaintiffs appeal the trial court's judgment.

DISCUSSION
On appeal appellants steadfastly maintain that they are entitled to recover full damages, including lost profits for the entire ten-year term of the Agreement. Appellants point out that none of the relevant Louisiana Civil Code articles [Arts. 1994, 1995, 2013, 2017, 2018] limit their recovery to damages occurring before termination, citing numerous cases from this state and others that have awarded future lost profits as "damages" for breach of contract.
Just as steadfastly, Arkla and ACC maintain the correctness of the trial court ruling, arguing that in none of the cases cited by appellants did the obligee exercise a contractual right of dissolution, as in the instant case. While agreeing that recovery for loss of future profits is allowed for breach of contract, appellees argue that the case at bar is more properly resolved under articles 2017 and 2018 of the Louisiana Civil Code, which provide as follows:
Art. 2017. Express dissolution clause
The parties may expressly agree that the contract shall be dissolved for the failure to perform a particular obligation. In that case, the contract is deemed dissolved at the time it provides for or, in the absence of such a provision, at the time the obligee gives notice to the obligor that he avails himself of the dissolution clause.
Art. 2018. Effects of dissolution
Upon dissolution of a contract, the parties shall be restored to the situation that existed before the contract was made. If restoration in kind is impossible or impracticable, the court may award damages.
If partial performance has been rendered and that performance is of value to the party seeking to dissolve the contract, the dissolution does not preclude recovery for that performance, whether in contract or quasi-contract.
Appellees maintain that by choosing to terminate the Agreement, Barnco elected the remedy of dissolution of the contract, and should not now be permitted to affirm the existence of the contract for the purpose of claiming the inconsistent remedy of damages following dissolution. They argue there were other remedies available to Barnco in the Agreement, such as placing ACC in default for nonperformance pursuant to paragraph 11.01 of the Agreement, electing to not terminate in the event that the material breach was not cured within 30 days, and suing for all damages, including future lost profits. Appellees point out that Barnco, under the specific terms of the Agreement, could also have chosen to convert ACC's exclusive distributorship rights to nonexclusive, and still preserved the claim for future lost profits. However, appellees firmly maintain that once Barnco chose the option of termination, it deprived ACC of the legal right and ability to further market the In-Gen System, ACC has relied upon that choice, and has significantly changed its position with respect to the Agreement to its detriment.
Appellants counter by arguing that paragraph 11.01 of the Agreement also gave Barnco the right to dissolve or terminate the *166 Agreement for failure to make timely payments. This type of provision, categorized as an "express dissolution clause," is specifically recognized as valid by LSA-C.C. Art. 2017. Upon dissolution, the parties shall be restored to the situation that existed before the contract was made. If restoration in kind is impossible or impracticable, the court may award damages. LSA-C.C. Art. 2018. The measure of damages that the obligee may be entitled to recover under LSA-C.C. Art. 2018 equals the loss sustained by the obligee and the profit of which he has been deprived. LSA-C.C. Art. 1995. Citing the doctrine of "election of remedies," appellees disagree with appellants' construction of LSA-C.C. Arts. 2017, 2018, and 1995, arguing that when Barnco exercised the express dissolution clause, the parties were restored to their respective positions prior to the existence of the contract, and the lost profits that Barnco may claim are limited to those that Barnco can show were sustained by the actions of ACC prior to termination.
The election of remedies doctrine originates from common law, and has been generally defined as the choice by a party to an action between two or more coexisting remedial rights, where several such rights arise out of the same facts. However, the term has been generally limited to a choice by a party between inconsistent remedial rights, the assertion of one being necessarily repugnant to, or a repudiation of, the other. Finn v. Employers' Liability Assurance Corporation, 141 So.2d 852, 863 (La.App. 2d Cir.1962), quoting 28 C.J.S. Election of Remedies, § 1(a). In other jurisdictions, it is well settled that a remedy based upon a theory of affirmance of a contract is inconsistent with a remedy based upon its disaffirmance. This application of the common law election of remedies doctrine has been employed to find that where a party rescinds a contract, the law does not permit him to thereafter make use of it as subsisting for the purpose of claiming damages. 28 C.J.S. Election of Remedies, § 6.
The Louisiana counterpart to the common law election of remedies doctrine was formerly contained in Articles 149 through 152 of the Louisiana Code of Practice which prohibited a plaintiff from cumulating several demands in the same action, when one of them was contrary to, or precluded another. Brown v. Lancaster, 218 La. 1036, 51 So.2d 617, 620-621 (1951). However, early jurisprudence interpreting these articles modified this rule, finding that although the articles were confined in terms to cumulation in the same action, in spirit, they prohibited inconsistent demands in two different actions. Id., at 621, citing Adams v. Lewis, 7 Mart. (n.s.) 400. Subsequent jurisprudence interpreting Louisiana Code of Practice Articles 149 through 152 held that different claims pled in the same action were not inconsistent, and an election was not required, as long as they were pleaded alternatively. Jones v. Williams, 215 La. 1, 39 So.2d 746 (1949); Boxwell v. Department of Highways, 203 La. 760, 14 So.2d 627 (1943); Templet v. Babbitt, 198 La. 810, 5 So.2d 13 (1941); and Nicol v. Jacoby, 157 La. 757, 103 So. 33 (1925).
With the advent of the Louisiana Code of Civil Procedure, these statutory principles, as interpreted and modified by the jurisprudence, were continued in LSA-C.C.P. Art. 892. Article 892 specifically allows the pleading of inconsistent or mutually exclusive causes of action in one pleading as long as they are pled in the alternative.
In Giron v. Housing Authority of the City of Opelousas, 393 So.2d 1267, 1271 (La.1981), the Louisiana Supreme Court recognized the partial demise of the doctrine of election of remedies in Louisiana, stating:
Accordingly, the common law election of remedies doctrine is inconsistent with the modern procedural concepts embodied in our present code of civil procedure, although it may have had some validity under our former procedural scheme requiring technical consistency and assertion of a theory of the case.
* * * * * *
Furthermore, even if the doctrine were available in Louisiana, it would not prevent the plaintiff in the present case from amending his petition with leave of court to alter his demand to pray for damages. The doctrine of election of remedies is *167 regarded as being an application of the law of estoppel, upon the theory that a party cannot in the assertion of his right occupy inconsistent positions in relation to the facts which form the basis of his respective remedies. However, when a certain state of facts under the law entitles a party to alternative remedies, both founded upon the identical state of facts, these remedies are not considered inconsistent remedies. In such a case the invocation of the one remedy is not an election which will bar the other, unless the suit upon the remedy first invoked shall reach the stage of final adjudication or unless by the invocation of the remedy first sought to be enforced the plaintiff shall have gained an advantage thereby or caused detriment or change of situation to the other. Abdallah v. Abdallah, 359 F.2d 170 (3d Cir.1966). (Emphasis ours.)
We hold the election of remedies doctrine still has limited application in Louisiana as part of our doctrine of equitable estoppel. Where the obligee's election of a certain right, remedy or option has caused the obligor to alter its position or rights to its detriment, the obligee is not allowed to shift to another right, remedy or option which subsequent circumstances or events might make more advantageous for him to adopt. Radiophone Service, Inc. v. Crowson Well Service, Inc., 309 So.2d 393, 395 (La.App. 2d Cir.1975), citing Borie v. Smither, 8 So.2d 148 (La.App.Orl.Cir.1942). Where double compensation for the same injury is threatened, the election of remedies doctrine may prevent a plaintiff who has elected a remedy from shifting to another remedy. See, e.g., Jackson v. American Mutual Liability Insurance Company, 584 So.2d 348 (La.App. 3d Cir.1991), writ denied, 589 So.2d 1075 (La. 1991) and Radiophone Service, Inc., supra. In contract cases where parties have invoked particular contractual rights or options, the electing parties may be forced to adhere to their previous choices between alternative substantive contractual rights. See, e.g., Garrett v. Girardian Insurance Company, 155 So.2d 284 (La.App. 2d Cir.1963); and Borie, supra. Thus, the doctrine may be available to the appellees in this case to limit the appellants' damages to those resulting from appellees' actions before termination, if it can be shown that Barnco gained an advantage by termination, or caused detriment or change of situation to appellees. Giron, supra.
It is well settled that the granting of a motion for summary judgment is appropriate if, the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits, show that: (1) there are no genuine issues of material fact, and (2) the mover is entitled to judgment as a matter of law. LSA-C.C.P. Art. 966; Ouachita National Bank v. Palowsky, 570 So.2d 114 (La.App. 2d Cir.1990). Summary judgment may be partial if it grants or denies a part of the relief prayed for by one of the parties. Smith v. Hanover Insurance Company, 363 So.2d 719 (La.App. 2d Cir.1978). The party requesting summary judgment based upon the election of remedies doctrine must prove that there are no genuine issues of material fact regarding its application and that the mover is clearly entitled to relief. Jackson, supra.
Applying all of these precepts to the present case, we examine whether ACC and Arkla have shown that there is no genuine issue of material fact that by terminating the Agreement, Barnco made a binding election of one remedy, termination, to the exclusion of another, and has "gained an advantage thereby or caused detriment or change of situation to the other." Giron, supra. Since appellees have not specifically contended that Barnco gained an advantage by termination, we focus on the requirement that appellees have shown the termination caused detriment or change of situation to ACC.
In support of their motion for partial summary judgment, appellees produced the Agreement, the termination letter of May 31, 1991, the deposition of Mr. Barnes, and the affidavit of an employee, Harry R. Shobe. Shobe's affidavit states that by terminating the Agreement, Barnco caused appellees to change their positions relative to Barnco. Specifically, the affidavit states that all marketing and distribution efforts were ceased and abandoned in reliance on the May 31, 1991, termination letter, since ACC's authority *168 for marketing and distributing the In-Gen Systems was based solely upon the contractual relationship with Barnco. Among other facts, Shobe's affidavit states that once the Agreement was terminated by Barnco, Mike Kemp, the In-Gen Sales Manager for ACC, left the company to become employed by Barnco.
In response to the motion, documents were submitted by appellants that show disputes of material fact exist on this issue. The level of ACC's performance is seriously disputed, appellees claiming the performance was sufficient under the contract, appellants claiming ACC's performance was so insubstantial as to be no performance at all. Indeed, some documents prepared by Arkla or ACC which were submitted in opposition to the motion for summary judgment might be interpreted by a trier of fact as showing ACC's expenditures in the marketing effort of the In-Gen System was so far below that anticipated by appellees to amount to little or no effort to perform. Other evidence submitted might be interpreted as showing that the effort to market by ACC in the remaining years of the Agreement would be the same as that of the past. It is undisputed that ACC had not sold any In-Gen Systems by the time of termination, save the three purchased by ACC to put in inventory.
With these materials, a fact finder might conclude that ACC was doing little or nothing to perform under the contract, had produced little or no results, and Barnco's termination of the Agreement did not cause "detriment or a change of situation" to ACC. Thus, the fact finder might conclude that although ACC was deprived of the ability to perform by the termination, no detriment or change of situation actually resulted from the termination because little or no performance had actually taken place prior to termination.
We recognize that appellees vigorously maintain ACC was performing at a level consistent with the requirements of the Agreement, and that its ability to further perform has been "cut off." We also recognize they may very well prevail before the trier of fact on the issue of election of remedies. However, the fact that the nonmoving party is unlikely to prevail at trial on the issue is an insufficient basis to grant a summary judgment. Chapeuis v. Cassimano, 568 So.2d 606, 609 (La.App. 4th Cir.1990), writ denied, 571 So.2d 629 (La.1990). Further, numerous cases have held summary judgment should be denied when there is any doubt about the existence of material fact.
We are not intending to express our opinion of what the results should be after all the facts are presented at trial, but merely hold that on the record before us, there appear to be genuine issues of material fact directly related to the election of remedies issue and, thus, the ability of appellants to recover future lost profits after termination of the contract. This being the case, the trial court erred in granting summary judgment in favor of appellees.

DECREE
For the reasons stated, that part of the lower court's judgment dated December 14, 1992, granting partial summary judgment in favor of Arkla and ACC and limiting damages to those losses which occurred as a result of the alleged breach on or prior to May 31, 1991, is reversed, and judgment is rendered rejecting such summary judgment. All costs are assessed to appellees.
REVERSED; PARTIAL SUMMARY JUDGMENT DENIED.

APPLICATION FOR REHEARING
Before NORRIS, LINDSAY, HIGHTOWER, VICTORY and BROWN, JJ.
Rehearing denied.
NOTES
[1] Arkla, Inc. also sought summary judgment because it was not a party to the Agreement. This aspect of the motion was denied by the trial court and was not appealed.