HENRY A. SUYDAM AND WILLIAM BOYD, PLAINTIFFS IN ERROR, vs. ROBERT BROADNAX AND ISAAC NEWTON, ADMINISTRATORS OF DAVID NEWTON, DECEASED, DEFENDANTS IN ERROR.

The plaintiffs, merchants of New York, instituted a suit in the Circuit Court of Alabama, against the administrators of the drawer of a note, dated in New York, and payable in New York. The act of the Assembly of Alabama provides, that the estate of a deceased person, which is declared to be insolvent, shall be distributed by the executors or administrators, according to the provisions of the statute, among the creditors; and that no suit or action shall be commenced or sustained against any executor or administrator after the estate of the deceased has been represented as insolvent, except in certain cases not of the description of that on which this suit was instituted. Held, that the insolvency of the estate, judicially declared under the statute of Alabama, is not sufficient in law to abate a suit instituted in the Circuit Court of the United States, by a citizen of another state, against the representatives of a citizen of Alabama.

The exceptions in the sixth section of the law of Alabama, in favour of debts contracted out of the state, prevent the applica on of the statute, or its operation in a case of a debt originating in and contracted by the deceased out of the state of Alabama.

A sovereign state, and one of the states of this Union, if the latter were not restrained by constitutional prohibitions, might, in virtue of sovereignty, act upon the contracts of its citizens, wherever made; and discharge them, by denying the right of action upon them in its own Courts: but the validity of such contracts as were made out of the sovereignty or state, would exist and continue everywhere else, according to the lex loci contractus.

The constitutional and legal rights of a citizen of the United States, to sue in the Circuit Courts of the United States, do not permit an act of insolvency, completely executed under the authority of a state, to be a good bar against a recovery upon a contract made in another state.

The eleventh section of the act to establish the Judicial Courts of the United States, carries out the constitutional right of a citizen of one state to sue a citizen of another state in the Circuit Cou  · of the United States; and gives to the Circuit Courts " original cognisance concurrent with the Courts of the several states, of all suits of a civil nature, at common law and in equity." It was certainly intended to give to suitors, having a right to sue in the Circuit Court, remedies, co-extensive with that right. These remedies would not be so, if any proceedings under an act of state legislation, to which the plaintiff was not a party, exempting a person of such state from suit, could be pleaded to abate a suit in the Circuit Court.

ON a certificate of division from the Circuit Court of the United States, of the Southern District of Alabama.

An action was instituted in the Circuit Court of Alabama by Henry A. Suydam and William Boyd, against the defendants, as administrators of David Newton, on a promissory note given by him to the plaintiffs.

On the trial of the cause the following questions arose, on which the judges of the Circuit Court were divided, and the same were certified to this Court.

1st. Is the plea that the estate of the said decedent is insolvent, sufficient in law to abate the said action?

2d. If the said plea be sufficient in law to abate said action, can the Circuit Court of the United States for the district aforesaid, refer said cause for adjudication and final settlement to a board of com-

missioners, to be appointed by a County Court in one of the counties in the state of Alabama, in pursuance of an act of the Legislature of the said state ?

Mr. Curtis, for the plaintiffs, presented the following points :—

1. The law of Alabama is no defence to the action, because it is in conflict with a law of the United States.

2. The law of Alabama is void, because it is repugnant to the clause in the tenth section of the eleventh article of the Constitution of the United States, which inhibits any state from passing " any law impairing the obligation of a contract."

3. Even if the law of Alabama be admitted to be valid, it is no defence to the action.

On the first point, That the law of Alabama is no defence to the action, because it is in conflict with a law of the United States, Mr. Curtis said :—

The plaintiffs, residing in New York, sued the defendants, residing in Alabama, as administrators of a deceased person. For the defence, a law of that state is relied on, the clause of which, applicable to the case, is as follows : " Nor shall any suit or action be commenced or sustained against him," [i. e. an executor or administrator,] " after the estate of the testator or intestate is represented insolvent." Two exceptions are made, which have nothing to do with the present case. Aikin's Digest of the Laws of Alabama, second edition, 1836, 152, 664, 8vo.

The second section of the third article of the Constitution of the United States extends their judicial powers to controversies between citizens of different states. The Judiciary Act of 24th September, 1789, section eleven, (2 Laws of the United States, 60, 61,) gives the Circuit Courts of the United States, original cognisance, concurrent with the Courts of the several states, of certain classes of cases, among which are cases in which " the suit is between a citizen of the state where the suit is brought, and a citizen of another state ;" and in which " the matter in dispute exceeds, exclusive of costs, the sum or value of five hundred dollars." It is admitted that the present case has both these requisites for jurisdiction on the part of the federal Court. The effect, then, of the defence, if successful, would be to establish the doctrine, that it is competent for a state legislature, under the Constitution of the United States, to pass a law to oust a Court of the United States of a jurisdiction which that Constitution had conferred on it.

The mere statement of such a proposition is, one would think, its conclusive refutation.

The effect claimed for the law of Alabama, would be to give a state exclusive jurisdiction of cases in which, by the Constitution and laws of the United States, and the judicial expositions of that Constitution and those laws, the state has no jurisdiction at all. " For," the Court said, " in cases of concurrent authority, where the laws of the states or of the Union are in direct and manifest collision on the

same subject, those of the Union being 'the supreme law of the land,' are of paramount authority; and the state-laws, so far, and so far only, as such incompatibility exists, must necessarily yield." Per Story, J., in Houston vs. Moore, 5 Wheat. 49, 50.

This passage occurs, it is true, in the opinion of a judge who dissented from the judgment of the Court in the particular case; but the difference between the judges was, not as to the principle, (for it appears never to have been, as Judge Story says, "seriously doubted,") but as to its application to the case before them. In the present case no such difference can exist. The law of the United States says that the Circuit Court shall try it: the law of Alabama says that the Circuit Court shall not try it. The conflict between the two statutes is direct and palpable. It is for the Supreme Court to say which is to prevail.

It may not be amiss, on this point of concurrent powers, to cite the principle laid by Chancellor Kent, after analyzing the case of Houston vs. Moore, and other cases, in which the subject had beer judicially examined: "It would seem, therefore, that the concur-rent power of legislation in the states, is not an independent, but a subordinate and dependent power, liable in many cases to be extinguished, and in all cases to be postponed, to the paramount or supreme law of the Union, wherever the federal and the state regulations interfere with each other." 1 Kent's Commentaries, 394. 388—393.

After referring to the doctrine of the Federalist, (No. 82,) that in all cases of concurrent jurisdiction, an appeal would lie from the state Courts to the Supreme Court of the United States; that with-out such right of appeal, the concurrent jurisdiction of the state Courts, in matters of national concern would be inadmissible, because, in that case, it would be inconsistent with the authority and efficiency of the general government; and after analyzing several cases, Chancellor Kent says, (1 Commentaries, 403,) that if the state Courts "voluntarily entertain jurisdiction of cases cognisable under the authority of the United States, they assume it upon the condition, that the appellate jurisdiction of the federal Courts shall apply." This proposition is irreconcilable with the assumption of the Alabama law, that the federal Courts shall have no jurisdiction at all in the present case.

The same learned judge lays it down as a principle, and sustains it by abundant authority, that "no state can control the exercise of any authority under the federal government." (1 Kent's Commentaries, 409—412.) Yet this is exactly what the state of Alabama seeks to do here.

In Fisher vs. Blight, 2 Cranch, 397, the Supreme Court emphatically assert "the supremacy of the laws of the United States, on all subjects to which the legislative power of Congress extends."

In a case in which the states of Virginia and Kentucky had made a compact, by the terms of which certain rights to land were to be

finally decided according to the laws of Virginia, the Supreme Court said:

" The Constitution of the United States, to which the parties to this compact had assented, gave jurisdiction to the federal Courts in controversies between citizens of different states. The same Constitution vested in this Court an appellate jurisdiction in all cases where original jurisdiction was given to the inferior Courts; with only such exceptions and under such regulations as the Congress shall make. Congress, in pursuance of the Constitution, has passed a law on the subject, in which the appellate jurisdiction of this Court is described in general terms, so as to comprehend this case; nor is there in that law any exception or regulation which would exclude the case of a caveat from its general provisions. If, then, the compact between Virginia and Kentucky was even susceptible of the construction contended for, that construction could only be maintained on the principle that the legislatures of any two states, might, by agreement among themselves, annul the Constitution of the United States. The jurisdiction of the Court being perfectly clear, it remains to inquire which of the parties has the better right." Wilson *vs.* Mason, 1 Cranch, 91, 92. See also, Sergeant's Constitutional Law, 44. 275, 276—278. 287—290, second edition, and the cases there cited.

- The laws of the several states, as to rights, furnish rules of decision for the federal Courts under certain qualifications; but as to remedies, they have no binding force in these Courts. Campbell, Boaden and Company *vs.* Claudius, 1 Peters C. C. Rep. 484.

The statutes of limitation of the different states do not bind the United States in suits in Courts of the United States; and cannot be pleaded in bar in a suit by the United States against individuals. United States *vs.* Hoar, 2 Mason, 311.

" It has been generally held, that the state Courts have a concurrent jurisdiction with the federal Courts, in cases to which the judicial power is extended, unless the jurisdiction of the federal be rendered exclusive by the words of the third article. If the words, ' to all cases,' give exclusive jurisdiction in cases affecting foreign ministers, they may also give exclusive jurisdiction, if such be the will of Congress, in cases arising under the Constitution, laws, and treaties of the United States." Cohens *vs.* Virginia, 6 Wheat. 397.

It has already been shown, that the conflict of the law of Alabama with the law of the United States, covering this case, makes the grant of jurisdiction in the latter to the federal Court a grant of exclusive jurisdiction, quoad this case.

The Judiciary Act of the 24th September, 1789, in section thirty-four, (2 Laws of the United States, 70,) declares that the laws of the several states, except where the Constitution, treaties, or statutes of the United States shall otherwise require or provide, shall be regarded as rules of decision in trials at common law, in the Courts of the United States, in cases where they apply.

The case at bar is the very exception. It is a suit for which a statute of the United States has "otherwise" provided: and far "otherwise" than the law of Alabama has done; for the federal law says expressly, that the suit may be brought, and the state law says expressly, that the suit shall not be brought.

This thirty-fourth section of the Judiciary Act of 1789, has no application to the practice of the Courts, nor in any manner calls upon them to pursue the various changes which may take place from time to time in the state Courts, with respect to their processes, and modes of proceeding under them. United States Bank *vs.* Halstead, 10 Wheat. 54.

So far as the act of Congress of the 8th May, 1792, (2 Laws of the United States, 299, 300,) called the "Process Act," perpetuating the former act of 29th September, 1789, (2 Laws of the United States, 72,) adopts the state laws as regulating the modes of proceeding in suits at common law, the adoption is expressly confined to those in force in September 1789. The act of Congress does not recognise the authority of any laws of this description which might be afterwards passed by the states. Wayman *vs.* Southard, 10 Wheat. 41.

If a state law cannot affect the course of causes in the federal Courts, after they have passed to judgment, how can it prevent them, when regularly prosecuted under a law of the United States, from passing the judgment?

On the second point it was argued, that the law of Alabama is void, because it is repugnant to the clause in the tenth section of the first article of the Constitution of the United States, which inhibits a state from passing "any law impairing the obligation of contracts."

This law manifestly impairs the obligation of a contract, because it destroys the creditor's remedy, in toto. It disables him from bringing a suit at all, and makes him an outlaw. See as to this point, Sturgis *vs.* Crowninshield, 4 Wheat. 122. M'Millan *vs.* M'Neill, 4 Wheat. 209. Ogden *vs.* Saunders, 12 Wheat. 213. 1 Kent's Com. 419.

On the third point, Mr. Curtis contended that, even if the law of Alabama be admitted, for the sake of argument, to be valid, it is no defence to the action.

The words of the law are, "Nor shall any suit or action be commenced or sustained against him, after the estate of the testator or intestate is represented insolvent."

Whether the words "commenced" and "sustained" are, as here used, synonymous or not, is a question on which philologists may differ. Dr. Johnson gives seven definitions of the word "sustain;" the first of which is, "to bear; to prop; to hold up:" the second, "to support; to keep from sinking under evil:" the third, "to maintain; to keep:" and the fourth, "to help; to relieve; to assist." Mr. Richardson, on the contrary, says that "sustinére," from which he derives it, means, not to hold up, but to hold or keep under, as well as to support; and defines "sustain" as meaning "to bear or

carry; to bear, to suffer, to endure." These are his only senses of the word; and they coincide with the remaining three given to it by Dr. Johnson. None of Richardson's definitions of the word "sustain," can, it is clear, help out the defence, so far as it rests on that word in the law. It is a word generally used loosely in statutory and judicial language; and it has even been "represented" that the legislature of Alabama is more remarkable than other legislatures for critical elegance or precision. The probability is, that the word "sustained" was thrown into the law in question as a mere pleonasm. If so, the law prohibits such suits only against an executor or administrator as are commenced after the estate of the testator or intestate is represented insolvent. Now, in the case at bar, the representation of insolvency was after the suit, instead of the suit being after the representation. The suit, therefore, was a proper one, even under the law of Alabama.

But, let it be conceded that the word "sustained" has a substantive meaning in the law, and bars actions properly "commenced," on a representation of insolvency made "pendente lite;" still the law would be inoperative to oust a jurisdiction which had once vested. "Where," says Chief Justice Marshall, "jurisdiction of the federal Court has once attached, no subsequent change in the relation or condition of the parties in the progress of the cause will oust the jurisdiction. The strongest considerations of utility and convenience require, that the jurisdiction once vested, the action of the Court should not be limited; but that it should proceed to make a final disposition of the subject." U. States *vs.* Myers et al. 2 Brock. C. C. Rep. 516.

This principle has been repeatedly announced by the Supreme Court of the United States. See Morgan's heirs *vs.* Morgan, 2 Wheat. 290. 297. Mollan *vs.* Torrance, 9 Wheat. 537. Dunn *vs.* Clarke, 8 Peters, 1. Clarke *vs.* Mathewson et al. 12 Peters, 164.

Mr. Justice WAYNE delivered the opinion of the Court.

This case has been sent to this Court upon a certificate of division of opinion between the judges of the Circuit Court of the Southern District of Alabama.

Suydam and Boyd, partners in trade, citizens of the state of New York, sue the defendants as administrators of David Newton, upon a promissory note given by the intestate to the plaintiff, dated New York, September 1st, 1835, payable in twelve months.

The defendants, as we are left to gather from a most imperfect record—for the pleadings, except the declaration, are not given—plead in abat .cnt of the suit, that the estate represented by them has been declared, under proceedings of a statute of Alabama, to be insolvent; and in such case, that they are not liable to be sued. _

The judges of the Circuit Court were opposed in opinion upon the question, " Is the plea that the estate of the said deceased is insolvent, sufficient in law to abate the said action?"

The statute of Alabama will be found in Aikin's Digest of the

Laws of Alabama, 151. The second section of it declares, that the estates of persons altogether insolvent shall be distributed among the creditors in proportion to the sums respectively due, after the payment of debts due for the last sickness and necessary funeral expenses. For the purpose of ascertaining such insolvency, the executor is permitted to exhibit to the Orphans Court an account and statement of the effects of the estate, including in it also the lands, tenements, and hereditaments of the testator or intestate: and if it shall appear to the Orphans Court that such estate is insolvent, then, after ordering the lands, tenements, and hereditaments of the testator or intestate to be sold, the Court shall appoint two or more commissioners, with power to receive and examine the claims of creditors of the estate; and the commissioners are directed to give notice of the times and places of their meeting, by notifications posted up in such public places, and in such newspapers, as the Orphans Court, or Chief Justice thereof may direct. Six months, and not more than eighteen months, shall be allowed by the Court to creditors to bring in and prove their claims before the commissioners. The commissioners, at the end of the time limited, are to make a report, on oath, to the Orphans Court, of all the claims which have been laid before them, with the sums allowed by them on each respective claim. The Court then shall order the residue of the estate, personal and real—the real estate being sold according to law—to be paid and distributed among the creditors whose claims have been allowed by the commissioners, in proportion to the sums respectively due. Provision is then made, either at the instance of a creditor, or executor, or administrator, either being dissatisfied with the report on a particular claim, under an order of the Orphans Court, to refer that claim to a Court of Referees, whose report upon it, when returned to the Orphans Court, and approved, is declared to be final and conclusive. And it is further declared, that no suit or action shall be commenced or sustained against any executor or administrator, after the estate is represented insolvent, except in certain cases not necessary to be now noticed. But the statute further provides for the liability of the executor or administrator to the creditors for their respective shares in the distribution; and then declares that the claims of creditors which have not been put before the commissioners within the time limited, or which have not been allowed in the other modes directed by the statute, shall be forever barred; unless such creditor shall find other estate of the deceased, not inventoried or accounted for by the executor or administrator, before distribution.

Is then the insolvency of the estate, judicially declared under the statute, sufficient in law to abate the suit of the plaintiff?

We think such an insolvency cannot abate the action upon which this division of opinion has been certified to this Court. The statute itself contains a provision which meets the question. The sixth section declares that "all claims against the estates of deceased persons shall be presented to the executor or administrator within eigh-

teen months after the same shall have accrued," "or within eighteen months after letters have been granted, and not after: and all claims not presented within that time, shall be forever barred from recovery:" but excepts, among other exceptions, debts contracted out of Alabama. Now, if an estate may be declared insolvent under the statute, in less than the longest time allowed to creditors to present their claims; and creditors, for debts contracted out of the state, are not limited to that time to present their claims; it follows, as a necessary consequence, that an estate having been declared to be insolvent within the shorter time, cannot exclude such creditor from maintaining a suit against the executor or administrator. And in cases of insolvency, declared after eighteen months, creditors of debts contracted out of the state cannot be included in the exclusion from the right to sue; for no time is limited for such claims to be presented: and in an action to enforce them, a recovery can only be prevented by such defences as would prevail in any other suit.

We think this a conclusive interpretation of the sixth section; and on this ground, that the plea of the estate being insolvent is not sufficient to abate this action.

But if the sixth section was not in the statute, our opinion would be the same, from the rule which must be applied to interpret such a statute. Statutes are mandatory, except of the established rules for the interpretation of them.

This is a statute which, by the exemption it gives to executors and administrators from suit, would seem to imply a denial to creditors of the intestate the right to sue, without respect to the foreign country or state, in our own Union, where the debt was contracted. It is a general statute, without a direct application to contracts made out of Alabama; and its construction cannot be extended to such contracts. Ratio est, quia statutum intelligit semper disponere de contractibus factis intra et non extra territorium suum. Casaragis Disc. 130, sec. 14—16. 20. 22. A sovereign state, and one of the states of the Union, if the latter were not restrained by constitutional prohibitions, might, in virtue of sovereignty, act upon the contracts of its citizens, wherever made, and discharge them, by denying a right of action upon them in its Courts. But the validity of such contracts as were made out of the sovereignty or state, would exist and continue everywhere else, according to the lex loci contractus. This shows the reason for and force of the rule just given; and it may be laid down as a safe position, that a statute discharging contracts or denying suits upon them, without the particular mention of foreign contracts, does not include them.

We do not mean, however, to decide this question solely by the interpretation which has been given to the statute.

It may be put upon other grounds, making our conclusion equally certain. They are such as are connected with the constitutional and legal rights of the plaintiffs to sue in the Circuit Courts of the United States; and upon the law which under our system does not permit an act of insolvency, completely executed under the autho-

rity of one state, to be a good bar against the recovery upon a contract made in another state.

The eleventh section of the act to establish the Judicial Courts of the United States, carries out the constitutional right of a citizen of one state to sue a citizen of another state in the Circuit Court of the United States; and gives to the Circuit Court "original cognisance, concurrent with the Courts of the several states, of all suits of a civil nature, at common law, and in equity," &c. &c. It was certainly intended to give to suitors having a right to sue in the Circuit Court, remedies co-extensive with these rights. These remedies would not be so, if any proceedings under an act of a state legislature, to which a plaintiff was not a party, exempting a person of such state from suit, could be pleaded to abate a suit in the Circuit Court. The division of opinion too, as it is presented in the record, is brought within the decisions of this Court, in Sturges *vs.* Crowninshield, 4 Wheat. 122, and Ogden *vs.* Saunders, 12 Wheat. 213. It must be remarked, however, that the statute of Alabama is one for the distribution of insolvent estates, not liable to the objections of a general law; and is only brought under the cases mentioned, by an attempt to extend its provisions to a citizen of another state.

In Sturges *vs.* Crowninshield, it is said, "Every bankrupt or insolvent system in the world must partake of the character of a judicial investigation. Parties whose rights are affected, are entitled to a hearing. Hence, any bankrupt or insolvent system professes to summon the creditors before some tribunal, to show cause against granting a discharge to the bankrupt. But on what principle can a citizen of another state be forced into the Courts of a state for this investigation? The judgment to be passed, is to prostrate his rights; and, on the subject of those rights, the Constitution exempts him from the jurisdiction of the state tribunals, without regard to the place where the contract may originate." In Ogden *vs.* Saunders: "A bankrupt or insolvent law of any state, which discharges both the person of the debtor and his future acquisitions of property, is not a law impairing the obligation of contracts, so far as respects debts contracted subsequently to the passage of the law. But a certificate of discharge cannot be pleaded in bar of an action brought by a citizen of another state, in the Courts of the United States, or of any other state than that where the discharge was obtained."

Though this is a statute intended to act upon the distribution of insolvent estates, and not a statute of bankruptcy; whatever exemption it may give from suit to an executor or administrator of an insolvent estate against the citizens of Alabama, a citizen of another state, being a creditor of the testator or intestate, cannot be acted upon by any proceedings under the statute, unless he shall have voluntarily made himself a party in them, so as to impair his constitutional and legal right to sue an executor or administrator in the Circuit Court of the United States.

Let it then be certified to the Circuit Court of the United States for the Southern District of Alabama, as the opinion of this Court,

that the plea that the estate of the decedent is insolvent, is not sufficent in law to abate the plaintiffs' action.

This cause came on to be heard on the transcript of the record from the Circuit Court of the United States for the Southern District of Alabama, and on the points and questions on which the judges of the said Circuit Court were opposed in opinion, and which were certified to this Court for its opinion, agreeably to the act of Congress in such case made and provided, and was argued by counsel. On consideration whereof, it is the opinion of this Court, that "the plea that the estate of the said decedent is insolvent, is not sufficient in law to bate the plaintiffs' action." Whereupon, it is now here ordered and adjudged by this Court, that it be so certified to the said Circuit Court accordingly.