**FISHER et ux. v. HOME INDEMNITY CO.**

No. 13810.

United States Court of Appeals
Fifth Circuit.

June 30, 1952.

Lansing L. Mitchell, New Orleans, La., for appellants.

St. Clair Adams, Jr., New Orleans, La., for appellee.

Before HUTCHESON, Chief Judge, and RUSSELL and STRUM, Circuit Judges.

HUTCHESON, Chief Judge.

Filed January 6, 1950, the suit, from the judgment in which this appeal comes, sought the recovery of damages by reason of the alleged injurious effect of consuming a product known as Westsal, between the dates of January 19, 1949, and February 20, 1949. This product was manufactured by Foster-Milburn Company, Inc., of Buffalo, New York, and its wholly owned subsidiaries, including among others and particularly its Westwood Pharmaceutical Division and Westwood Pharmacal Corporation, both of Buffalo, New York. The Home Indemnity Company, which is a corporation organized under the laws of the State of New York, and has qualified to transact business in the State of Louisiana, is the public liability insurer of the manufacturer of Westsal, and, as such, it issued and delivered in New York the policy sued on.

The product Westsal was sold by Foster-Milburn Company, Inc., or its subsidiaries, in drug stores in the State of Louisiana, but neither that company nor its subsidiaries were qualified to, nor did they, transact business in the State of Louisiana, or have an agent for the service of process there. The policy of insurance, a certified copy of which appears in the supplemental record, contains a clause designated as "Action Against Company", which reads as follows:

"Condition E: No action shall lie against the Company to recover upon any claim, or for any loss, unless brought after the amount of such claim or loss shall have been fixed and rendered certain, either by final judgment against the Assured after trial of the issue, or by agreement between the parties with the written consent of the Company, nor unless brought within two (2) years from the date of such judgment or agreement."

This clause, which is commonly referred to as a "No Action Clause", is valid and enforcible in the State of New York where defendant has its domicile and where the policy of insurance was issued and delivered.

The action having been brought against defendant without complying with, indeed in direct disregard of the condition above set out, the defendant moved to dismiss the action because the complaint failed to state a claim against defendant upon which relief could be granted.

Full briefs having been filed and argument had, the district judge, on July 18, 1951, filing a brief statement [1] of his reasons for doing so, dismissed the action, and plaintiffs on the same day appealed to this court.

On May 20, 1952, after this cause had been set for argument here, plaintiff filed a motion in the court below to make a supplemental part of the record the "Consent to be sued",[2] filed by defendant with the

[1]. "The court is very familiar with the points taken, and I have studied the briefs filed by Counsel on both sides, and Counsel for plaintiffs has made a very persuasive argument from the standpoint of allowing these plaintiffs to sue here where the injury occurred and the witnesses are. However, plaintiffs are seeking to sue, not the person who is allegedly responsible for the injury but rather his insurer, and that insurer has made a contract to indemnity its insured only under certain conditions. One of these conditions is outlined in the so called no action clause. I believe the no action clause conditions the responsibility of the insurer. It is a substantial condition which I do not be-

lieve the State can eliminate by reforming the contract to the detriment of the insurer, and for reasons outlined in my original opinion in the Belanger case, Belanger v. Great American Indemnity Co., D.C., 89 F.Supp. 736, Civil Actions numbers 2644 and 2647 are dismissed."

[2]. "Consent To Be Sued By Foreign Or Alien Liability Insurer As Required by R. S. 22:983 (Act 542 of 1950).
"Know All Men By These Presents:
"That The Home Indemnity Company a corporation organized under the laws of the State of New York domiciled at 59 Maiden Lane, State of New York, and having its principal business establish-

Secretary of State, provided for by Act 542 of 1950, approved July 10, 1950, LSA–R.S. 22:983.

Here, citing decisions of the Louisiana courts, including the latest, Churchman v. Ingram, La.App., 56 So.2d 297, by the Court of Appeal for the Second Circuit, and our case of Wells v. American Employers Ins. Co., 5 Cir., 132 F.2d 316, as in accord, appellants, with apparent confidence, urge upon us that the decision below was wrong, and the judgment should be reversed.

In addition, appellants put their reliance on the "Consent to be sued", which, given after the suit had been filed, was not pleaded or relied on by them, or otherwise called to the attention of the court until after the cause had been decided and the record on appeal had been lodged here.

The appellee, planting itself firmly on the opinion of the district court in Belanger v. Great American Indemnity Co., D.C., 89 F. Supp. 736, on which the district judge based his decision, that the direct action statute of Louisiana could not be invoked to destroy or impair the "no action" condition of the policy, and, citing the many cases [3] which hold to the same effect, insists that the Louisiana decisions, particularly Churchman v. Ingram, supra, and West v. Monroe Bakery, 217 La. 189, 46 So.2d 122, which refuse to give effect to valid policy provisions, are not correctly decided and, upon the federal constitutional question involved here, are without authority. We agree.

In complete agreement with the views of the district judge as they are set forth in the Belanger case, supra, we find ourselves unable to improve upon the clear and forceful statement and correct application of the general principles controlling here. We will not, therefore, attempt to restate them. We will content ourselves with announcing our adherence to them, and will confine our elaboration upon the opinion to matters not touched upon, or, if touched upon, not dealt with fully, therein.

One of these is the question so much and so vainly labored in the Churchman case, that, in the opinion of the courts of Louisiana, the direct action statute is not substantive but procedural, and, being procedural cannot be said to impair the no action clause of the policy. We may put to one side the fact that, contrary to the opinion in the Churchman case, supra, the Act 55 of 1930, LSA–R.S. 22:655, which purports to grant a direct right of action, has been expressly held in the latest decision of the Supreme Court of Louisiana, West v. Monroe Baking Co., supra [46 So.2d 123], to confer "substantive rights on third parties to contracts of public liability insurance, which become vested at the moment of the accident in which they are injured", and that that case holds that all provisions in the policy imposing restrictions upon those rights are invalid. Indeed, without appellants' taking any benefit from the concession, we might concede, though the decisions are to the contrary, that the uniform construction of the statute by the Louisiana courts is still, as it seemed to a majority of the court to be when the court decided the case of Wells v. American Employers Ins. Co., 5 Cir., 132 F.2d 316, that the statute is merely procedural. The question for decision here, (where the attempt is made, by a construction of a state statute, to invalidate a provision of a contract made outside the state, which was valid where made,) wheth-

ment in the City of New York, State of New York, doing business, or being about to do business in the State of Louisiana in conformity with the laws thereof, does, pursuant to the laws of said State, hereby make this its written declaration:

"That this said corporation does consent to its being sued in the State of Louisiana by an injured person or his or her heirs in a direct action as provided by the laws of the State of Louisiana, particularly R. S. 22:655, whether the policy of insurance sued upon was written or delivered in the State of Louisiana or not, and whether or not such policy contains a provision forbidding such direct action, provided that the accident occurred within the State of Louisiana."

3. Ritterbusch v. Sexmith, 256 Wis. 507, 41 N.W.2d 611, 16 A.L.R.2d 873, Coderre v. Travelers, 48 R.I. 152, 136 A. 305, 54 A.L.R. 512; Bayard v. Traders & General Ins. Co., D.C., 99 F.Supp. 343; Bish v. Employers Liability Assur. Corp., D.C., 102 F.Supp. 343; Riding v. Travelers Ins. Co., 48 R.I. 433; 138 A. 186; Martin v. Zurich, 1 Cir., 84 F.2d 6; Wheat v. White, D.C., 38 F.Supp. 796.

er this may be constitutionally done, is quite a different one from that presented and decided in the Wells case, whether extra territorial effect could be given in a suit in Texas to a Louisiana statute held by Louisiana courts to be procedural.

Pointing out in the Wells case that the Louisiana Courts were then holding that the statute was procedural, and, accepting that holding as authoritative for the point before us, we correctly held that, of course, extra territorial effect could not be given to it in the Texas courts.

In our later decision, Soileau v. New Amsterdam, 5 Cir., 167 F.2d 767, 769, 6 A. L.R.2d 128, where we undertook to determine for ourselves the effect of the statute and not merely what the Louisiana courts had said the effect was, the court, speaking through the late lamented Judge Lee, a Louisiana lawyer of great distinction and ability, said, "The 1930 Act is not wholly procedural, for it confers also a substantive right upon the injured party in the direct action granted such party against the insurer". It is significant that the latest and most authoritative pronouncement of the Supreme Court of Louisiana, in the Monroe Bakery case, supra, is in precise accord with this view. The difference here between the authoritative holding of the Louisiana courts and that of the federal courts, as to the meaning and effect of the statute, is not to be found in the construction of the statute as substantive or procedural, a field in

which, if there were differences, the Louisiana courts would be supreme. It is to be found in the determination of the Louisiana courts that the statute may constitutionally impair the obligation of a contract to the extent of invalidating a valid "no action" provision of a policy issued and accepted in another state, and the holding of the federal courts that it may not. In this field the federal courts are supreme.[4]

██ We are in no doubt that the "no action" provision of the policy in suit was, and is, valid and enforcible, and that neither the Legislature nor the courts of Louisiana can give the invoked "direct action" statute a construction or effect which, without the consent of appellee, will invalidate or render nugatory the provision. We, therefore, reject the contention put forward by appellant on the authority of Churchman's case that, by giving the name "procedural" to a statute passed to confer, and conferring, substantive rights, the courts of Louisiana can destroy or impair the obligation of the valid contract made outside of Louisiana by and between insurer and insured, in virtue alone of which the invoked coverage exists.

On the record on which the case was tried, the judgment dismissing the suit was right and must be affirmed.

It remains only to inquire and determine: (1) whether, the "consent to sue," which was filed with the Secretary of State after the cause of action in this case arose,

---

4. As appellee states it:
"'It is true that under Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 * * *, this court is bound to follow the decisions of the courts of last resort of the state in cases wherein jurisdiction is based on diversity of citizenship. However, even in diversity cases, where a defense is made based on the Constitution of the United States, this court cannot follow courts of last resort of the state but must be guided by the decisions of the Supreme and appellate courts of the United States.' Belanger v. Great Am. Indmn. Co., D.C., 89 F. Supp. 736, at p. 738."
"The Rules of Decision Act provides as follows:
"'The laws of the several states, except where constitution or treaties of the United States or Acts of Congress otherwise require or provide, shall be re-

garded as rules of decision in civil actions in the Courts of the United States, in cases where they apply.' 28 U.S.C.A. § 1652."
"The Act itself plainly states that federal courts are not to be bound by the decisions of a state court where the constitutionality of a state statute is involved."
"In Irving Trust Co. v. Day, 314 U.S. 556, 62 S.Ct. 398, 86 L.Ed. 452, * * * the court said:
"'When this Court is asked to invalidate a state statute upon the ground that it impairs the obligation of a contract, the existence of the contract and the nature and extent of its obligation become federal questions for the purposes of determining whether they are within the scope and meaning of the Federal Constitution, and for such purposes finality cannot be accorded to the views of a state court.'"

222

the suit had been filed and the motion to dismiss it made, may now be considered by us notwithstanding it was not brought to the attention of the court below and was not, and could not have been, made a part of the record on appeal; and (2) if it may, whether appellant thereby waived the "no action" provision of its policy.

We answer both inquiries in the negative. We think it plain that, not presented or asserted below, it may not be asserted for the first time here. Further, if we could consider the "consent", we should be obliged to hold that it is without effect in this cause. Statutes, unless plainly indicating the contrary, are to be construed prospectively, especially where, as here, substantive rights are involved. Even were it procedural, which it plainly is not, the statute under, and in compliance with, which the plaintiff surrendered, or waived in future its substantive rights under the "no action" provision of its policy, speaks in the plainest kind of way, not retrospectively but prospectively, and it must be construed that way. While, as to actions brought after its "consent to be sued" was filed, the consent plainly waived the "no action" provision of its policy, it as plainly did not do so as to actions already pending. Certainly it did not do so as to this action as to which it had presented was continuing to press, and still presses, the defense of no cause or right of action. Cf. Belanger v. Great American, 5 Cir., 188 F. 2d and cases cited at page 198.

The judgment was right. It is affirmed.