LEWIS et al. v. MANUFACTURERS CASUALTY INS. CO.
Civ. A. No. 3764.

United States District Court
W. D. Louisiana, Shreveport Division.

Sept. 24, 1952.

Godfrey & Edwards, Many, La., for plaintiffs.

Jackson, Mayer & Kennedy, Shreveport, La., for defendant.

Booth, Lockard & Jack, Shreveport, La., amicus curiae.

PORTERIE, District Judge.

This is an action by husband and wife, each individually, and the husband for and on behalf of his minor child, for damages for personal injuries sustained by the wife and child and medical expenses incurred by the husband as a result of the negligent driving of an automobile on April 12, 1952, in DeSoto Parish, Louisiana, by one D. R. Spainhour, who was accompanied at the time by his wife, the owner of the automobile. The plaintiffs and the Spainhours are Louisiana citizens.

Plaintiffs allege that the sole and proximate cause of the accident and their result-

ing injuries was the negligent operation of the Spainhour automobile.

At the time of the accident, defendant, an insurance corporation organized under and by virtue of the laws of the State of Pennsylvania, was the insurer of Mrs. Spainhour, inter alia, against any liability whatsoever incurred by her or anyone driving her automobile with her permission to any member. or members of the public as a result of its negligent operation, within certain limits contained in their policy, not pertinent to the sole issue here.[1] While driving his wife's automobile with her permission, of course, Spainhour was the insured.

Defendant has been licensed to do business in this State. At the time of the issuance and delivery of its policy (February 5, 1952), at the time of the accident (April 12, 1952), at the time of filing of this action (June 11, 1952), and at this very time defendant was and is licensed to do and was and is doing business in this State. On March 27, 1951, defendant voluntarily filed its "consent to be sued" by anyone injured by its insureds in Louisiana. All of these dates are subsequent to July 27, 1950, the effective date of Louisiana Act 541 of 1950, LSA-R.S. 22:655, hereafter sometimes called the direct-action statute, and of Louisiana Act 542 of 1950, LSA-R.S. 22:-983(E), hereafter sometimes called the consent statute, which Acts are the pertinent law of Louisiana today.

We have had the occasion to adjudicate on numerous constitutional objections leveled at these statutes.[2] They have been held constitutional as a proper and permissible regulation of the business of insurance in this State. See, Buxton v. Midwestern Ins. Co., D.C., 102 F.Supp. 500, 501[3]; cf. Fisher v. Home Indemnity Company, 5 Cir., 1952, 198 F.2d 218, 219[4]; Cushing v. Maryland Casualty Company, 5 Cir., 1952, 198 F.2d 536.[5]

*This defendant now moves to dismiss this* action on the grounds that (a) the complaint fails to state a claim upon which relief can be granted; (b) the provisions of the statute under which this action is instituted, LSA-R.S. 22:655, "are procedural and are, therefore, not applicable herein"; (c) the sole controversy in this action is between plaintiffs and the Spainhours, all Louisiana citizens; and (d) there is no

---

1. The amount of the policy, being beyond $3,000, is unimportant. The amount each complainant sues for, being in excess of $3,000, in apparent good faith, and being unchallenged, is inconsequential; recovery cannot be had beyond the limits and the legal provisions of the policy.

2. The objections were that the statutes would (a) impair the obligations of the insurance contract; (b) violate the Full Faith and Credit Clause, Const. art. 4, § 1; (c) deny due process of law; and (d) deny the equal protection of the laws.

3. The Buxton case decided, independent of whether the direct-action statute was substantive or procedural, that the consent statute bound defendant since its "consent to be sued" was voluntarily filed with the Secretary of State *before* the policy was issued, the accident occurred, or the suit filed, in spite of the "no action clause" in its policy. In short, all of these operative facts occurred since the effective dates of the statutes; therefore, the direct action was allowed.

4. The Fisher case, a fine example of masterful legal interpretation, decided that the "no action clause" in a policy which was valid under the operative facts of that case and under the law then existing and applicable, La.Act 195 of 1948, Sec. 14.45, LSA-R.S. 22:655, was not waived by the filing of defendant's "consent to be sued", under the consent statute, *after* the cause of action arose, in view of the fact that the direct-action statute created a substantive right and that the consent statute operated prospectively and neither statute was retroactive. The direct action was consequently not allowed.

The Fisher case approved the Buxton case when it said that: " * * * as to actions brought after its 'consent to be sued' was filed, the consent plainly waived the 'no action' provision of its policy * * *". 198 F.2d 222.

5. The Cushing case, citing the Fisher case as authority, again held the direct-action statute to be substantive and there valid and applicable, under the operative facts of that case; and, indicating approval of the Buxton case, implied that, since defendants voluntarily filed their "consent to be sued" *before* the cause of action arose, the direct action of plaintiffs would be and was allowed.

"case" or "controversy" between plaintiffs and defendant.

■ (a) The complaint so obviously states a claim upon which relief can be granted that we deny this phase of defendant's motion without elaboration. Cf. Rule 8(a); Appendix of Forms, Form 9, Federal Rules of Civil Procedure, 28 U.S.C.A.

■ (b) LSA–R.S. 22:655 has been declared so many times to be substantive by final authority that we deny this phase of defendant's motion without elaboration by merely citing the latest case on the point. Cushing v. Maryland Casualty Company, 5 Cir., 1952, 198 F.2d 536.

(c) Whether or not there is a controversy between plaintiffs and the Spainhours is immaterial to the issue here.

(d) The sole issue presented, therefore, is whether or not a "controversy" exists between plaintiffs and defendant.

We have already adjudicated that a controversy exists between a wrongfully injured member of the public and the public liability insurer of the tort-feasor, irrespective of the citizenship of the insured-tortfeasor and the wrongfully injured member of the public, and that this Court has jurisdiction to hear and determine that controversy if there is diversity of citizenship between the injured and the insurer and over $3,000, exclusive of interest and costs, is involved. Soileau v. New Amsterdam Casualty Co., Civil Action, File No. 1968. We have been affirmed on the point by a Court which we are bound to follow. New Amsterdam Casualty Co. v. Soileau, 5 Cir., 167 F.2d 767, 6 A.L.R.2d 128.[6] Review of the case was refused by the Highest Tribunal in this Nation. New Amsterdam Casualty Co. v. Soileau, 335 U.S. 822, 69 S.Ct. 45, 93 L.Ed. 376. All of which, of itself, we feel, is not only sufficient, but is a mandate to us to immediately foreclose defendant. We may not, with propriety, lightly forsake controlling authority, long-respected precedents, and established practice merely to avoid duties allegedly disagreeable.

But the moving defendant urges now, and again, by specific mention, that there is no "case" or "controversy" between plaintiffs and itself (defendant). Point (d) above. Though, for obvious reasons, this point is already clearly encompassed in the previous decisions, we have decided to re-examine and elaborate on the question and its related field.

The Constitution of the United States, in pertinent part, provides:

"The judicial Power shall extend * * * to *Controversies* * * * *between Citizens of different States* * * *". Art. III, § 2, U.S.Const. (Emphasis ours.)

■ This, simply put, is jurisdiction.

"Judicial power", much too comprehensively defined, yet sufficient for our purpose here, is the authority and the *duty* of a court to hear, determine, and bindingly pronounce judgment on the rights of parties who bring a case before it and to carry its judgment into effect.

■ This Court was ordained and established; 28 U.S.C. § 98(b), 28 U.S.C.A. § 98(b); and it was vested with judicial power in controversies between citizens of different states, by the Congress of the United States, pursuant to the authority given the Congress by the people[7] in Section 1 of Article III of the Constitution of the United States[8], by the following pertinent provisions of our Judicial Code:

"The district courts shall have original jurisdiction of *all civil actions* where the matter in controversy exceeds the sum or value of $3,000 exclu-

---

**6.** The Court of Appeals plainly and tersely said in the Soileau case:

"Equally without merit is the contention that the court below was without jurisdiction, since the actual controversy was one between the insured and the injured party, both citizens of Louisiana." 167 F.2d 767, 770, 6 A.L.R.2d 128, 134.

**7.** "We The *People* of the United States

* * * do ordain and establish this Constitution for the United States of America." Preamble, U.S.Const. (Emphasis ours.)

**8.** "The judicial Power of the United States, shall be vested * * * in such inferior Courts as the Congress may from time to time ordain and establish." Art. III, § 1, U.S.Const.

sive of interest and costs, and is between:

"(1) Citizens of different States". 28 U.S.C. § 1332, 28 U.S.C.A. § 1332. (Emphasis ours.)

"A corporation may be sued in any judicial district in which it is incorporated or *licensed to do business* or *is doing business,* and such judicial district shall be regarded as the residence of such corporation for venue purposes." 28 U.S.C. § 1391(c), 28 U.S.C.A. § 1391(c). (Emphasis ours.)

■ While a corporation itself can be a citizen of no State, in the sense in which the word "citizen" is used in the Constitution, yet the word "Citizens" as used in Article III, § 2, of the Constitution, has always been held to include corporations. Muller v. Dows, 94 U.S. 444, 24 L.Ed. 207.

■ It is no longer debatable that a state corporation is a citizen of the state which creates it for the purpose of suing and being sued, "* * * and hence such a corporation is itself deemed to come within that provision of the constitution of the United States which confers jurisdiction upon the federal courts in 'controversies between citizens of different states.'" St. Louis & S. F. Ry. Co. v. James, 161 U.S. 545, 16 S.Ct. 621, 627, 40 L.Ed. 802.

■ The fact that a corporation was organized under and by virtue of the laws of one state and does business in another also, by complying with the laws of the latter, does not affect or change the "citizenship" of the corporation. "It does not thereby become a citizen of the state in which a copy of its charter is filed, so far as to affect the jurisdiction of the Federal courts upon a question of diverse citizenship." Southern R. Co. v. Allison, 190 U.S. 326, 23 S.Ct. 713, 717, 47 L.Ed. 1078.

■ Defendant was organized under the laws of Pennsylvania; it is a citizen of Pennsylvania. Plaintiffs are all citizens of Louisiana. There is, therefore, complete diversity of citizenship in this action. Defendant is licensed to do business here; it did business here; it does business here; it is found here; it was served and cited here in Louisiana. Cf. Buxton v. Midwestern. Ins. Co., D.C., 102 F.Supp. 500, and cases there cited.

This Court, therefore, has jurisdiction in this civil action as this matter exceeds the sum or value of $3,000, exclusive of interest and costs, and is between citizens of different states, if we find a controversy exists between plaintiffs on the one hand and defendant on the other.

■ Congress has declared, over seven years ago, that the continued regulation of the business of insurance, affected as it is with a public interest, is States' Rights. The McCarran Act, 59 Stat. 33, c. 20, 15 U.S.C. § 1011 et seq., 15 U.S.C.A. § 1011 et seq.; see, also, Buxton v. Midwestern Ins. Co., D.C., 102 F.Supp. 500; Cushing v. Maryland Casualty Company, 5 Cir., 1952, 198 F.2d 536.

The business of insurance is affected by a great and vast public interest. Prudential Ins. Co. v. Benjamin, 328 U.S. 408, 66 S. Ct. 1142, 90 L.Ed. 1342, 164 A.L.R. 476. "Insurance touches the home, the family, and the occupation or the business of almost every person in the United States." United States v. South Eastern Underwriters Ass'n, 322 U.S. 533, 64 S.Ct. 1162, 1167, 88 L.Ed. 1440.

■ Congress so declaring and the business of insurance being so affected, the law-making body of this State has not only the right, but the duty, to regulate that business; and it may regulate the business of insurance in any manner it sees fit, so long as it does not go beyond any legitimate interest of the State or does not use that right as a part of a scheme to accomplish a forbidden result. See, Buxton v. Midwestern Ins. Co., D.C., 102 F.Supp. 500, and cases there cited.

Louisiana does regulate the business of insurance in all its phases. Louisiana Insurance Code; LSA–R.S. of 1950, Title 22.

■ The law of Louisiana is that a policy of public liability insurance governs the rights of the parties concerned (which includes not only the insurer and the insured, but also any member of the public thereafter negligently injured by the insured), save and except certain provisions,

which, though provided in the policy, are null and void, for reasons better known to, and concerning only, the law-making body of this State. Cf. California State Automobile Ass'n Inter-Insurance Bureau v. Maloney, 341 U.S. 105, 71 S.Ct. 601, 95 L. Ed. 788.

Hence, the "no action clause" contained in the public liability policy involved in this action is, in view of the Louisiana direct-action statute [9] and the consent statute [10], null and void and not binding on plaintiffs, members of the general and traveling public. Cushing v. Maryland Casualty Company, 5 Cir., 1952, 198 F.2d 536; Buxton v. Midwestern Ins. Co., D.C., 102 F.Supp. 500, and cases cited therein.

The public policy of this State, announced time and again, is that an insurance policy against liability to the public is not issued primarily for the protection of the insured, but for the protection of the general public. Davies v. Consolidated Underwriters, 199 La. 459, 6 So.2d 351; West v. Monroe Bakery, 217 La. 189, 46 So. 2d 122; Buxton v. Midwestern Ins. Co., D.C., 102 F.Supp. 500; Cushing v. Maryland Casualty Company, 5 Cir., 1952, 198 F.2d 536.

The public policy of this State, when the Legislature acts within its sphere, is what the Legislature says that it shall be; Davies v. Consolidated Underwriters, 199 La. 459, 6 So.2d 351; regardless of one's own opinion as to the wisdom of the law [11]—"* * * [which] *must* be *wholly* excluded when one is doing one's judicial duty." Osborn v. Ozlin, 310 U.S. 53, 60 S.Ct. 758, 762, 763, 84 L.Ed. 1074. (Emphasis ours.)

Courts should be charily slow to substitute their own varying views of policy and fly in the face of that policy ordained by the proper branch of government, par-

9. The direct-action statute provides:
"No policy or contract of liability insurance shall be issued or delivered in this state, unless it contains provisions to the effect that the insolvency or bankruptcy of the insured, shall not release the insurer from the payment of damages for injuries sustained or loss occasioned during the existence of the policy, and any judgment which may be rendered against the insured for which the insurer is liable which shall have become executory, shall be deemed prima facie evidence of the insolvency of the insured, and an action may thereafter be maintained within the terms and limits of the policy by the injured person or his or her heirs against the insurer. The injured person or his or her heirs, at their option, shall have a right of direct action against the insurer within the terms and limits of the policy in the parish where the accident or injury occurred or in the parish where the insured has his domicile, and said action may be brought against the insurer alone or against both the insured and the insurer, jointly and in solido. *This right of direct action shall exist whether the policy of insurance sued upon was written or delivered in the State of Louisiana or not and whether or not such policy contains a provision forbidding such direct action, provided the accident or injury occurred within the State of Louisiana.* Nothing contained in this Section shall be construed to affect the provisions of the policy or contract if the same are not in violation of the laws of this state. It is the intent of this Section that any action brought hereunder shall be subject to all of the lawful conditions of the policy or contract and the defenses which could be urged by the insurer to a direct action brought by the insured, provided the terms and conditions of such policy or contract are not in violation of the laws of this state." LSA–R.S. 22:655. (Emphasis ours.)

10. The consent statute provides:
"No certificate of authority to do business in Louisiana shall be issued to a foreign or alien liability insurer until such insurer shall consent to being sued by the injured person or his or her heirs in a direct action as provided in Section 655 of this Title, whether the policy of insurance sued upon was written or delivered in the State of Louisiana or not, and *whether or not such policy contains a provision forbidding such direct action,* provided that the accident or injury occurred within the State of Louisiana. The said foreign or alien insurer shall deliver to the Secretary of State as a condition precedent to the issuance of such authority, an instrument evidencing such consent." LSA–R.S. 22:983(E). (Emphasis ours.)

11. This Judge, however, believes there is much wisdom in many respects in the statutes, an important one being to prevent circuity of actions.

ticularly when the latter has taken root and flourished since almost time out of mind and has found embodiment in everyday beliefs and practices. Note the progress and metamorphosis of Louisiana Act 253 of 1918, which emerges today as Louisiana Acts 541 and 542 of 1950, LSA–R.S. 22:655 and 22:983(E). "With the policy of the state legislation the federal courts have nothing to do." Missouri, K. & T. Trust Co. v. Krumseig, 172 U.S. 351, 19 S.Ct. 179, 182, 43 L.Ed. 474.

The direct-action statute, since La.Act 55 of 1930, has had twenty-two years of active and repeated use in our courts, both state and federal. Its daily application has been fruitful of good and practical results for all concerned. The phase now urged by defendant was just simply taken as not so—as not existing. As if there is no "controversy"! That there was a controversy was taken as granted in the numerous cases over this statute, in both federal and state courts in this and other states. We cannot wilfully close our eyes to these considerations.

 Too clearly and too many times to be misread, this State, through its Legislature and Courts, has not only manifested the recognition that there is or may be a controversy between the parties to this action, but also the Legislature has created an action in plaintiffs against defendant, which they otherwise would be without, by Act 541 of 1950; Miller v. Commercial Standard Insurance Co., 199 La. 515, 6 So.2d 646; Cushing v. Maryland Casualty Company, 5 Cir., 1952, 198 F.2d 536; and further required defendant to file, voluntarily so for the privilege of doing business here, its "consent to be sued" by Act 542 of 1950; just as it had created for numerous beneficiaries an action under Article 2315 of the Louisiana Statutes Annotated— Civil Code, who otherwise would be with-

out it. See, Doucet v. Travelers Ins. Co., D.C., 91 F.Supp. 864, and cases there cited.

While it is true, as defendant argues, that Article 2315 of the Louisiana Revised Civil Code of 1870 "makes responsible only the person who committed the wrong"; it is equally true that Section 655 of Title 22 of the Louisiana Statutes Annotated— Revised Statutes of 1950 makes the wrongdoer's public liability insurer as responsible as the wrongdoer, up to the limits and within the legal provisions of the policy.[12]

Defendant is not liable to the plaintiffs under said Article 2315, even if the Spainhours are; plaintiffs are not suing the defendant under said Article 2315—and are not suing the Spainhours at all. Defendant is liable to plaintiffs under said Section 655; plaintiffs are suing defendant alone, as they have a substantive right to, under said Section 655.

Moreover, and also important, defendant, notwithstanding said Section 655, voluntarily and beforehand consented that this action might be litigated against it directly, in order to do business in Louisiana, under Section 983(E) of Title 22 of the Louisiana Statutes Annotated—Revised Statutes of 1950. Buxton v. Midwestern Ins. Co., D.C., 102 F.Supp. 500; cf. Fisher v. Home Indemnity Company, 5 Cir., 1952, 198 F.2d 218; Cushing v. Maryland Casualty Company, 5 Cir., 1952, 198 F.2d 536.

 When a cause or right of action or a remedy has been created, a case or controversy exists. "Whenever the law provides a remedy enforceable in the courts according to the regular course of legal procedure, and that remedy is pursued, there arises a case within the meaning of the Constitution, whether the subject of the litigation be property or status." Tutun v. United States, 270 U.S. 568, 46 S.Ct. 425, 427, 70 L.Ed. 738.

12. The Cushing case, 5 Cir., 1952, 198 F. 2d 536, categorically states:
 "Sec. 655, supra, confers upon an injured party a substantive right which becomes vested at the moment of the injury * * * the Louisiana statute merely creates in favor of one who has been wrongfully injured, an additional and cumulative remedy *at law* against an insurer who has agreed to indemnify the *tort-feasor* against liability, by subrogating the injured person to all the rights of the insured within the terms and limits of the policy." 198 F.2d 539. (Emphasis by the Court.)

 There is a controversy between plaintiffs and defendant. This Court, having jurisdiction to hear and determine it, must do so bindingly for any United States citizen, even a Louisiana citizen, regardless of the fact that, peculiar to our form of government (dual sovereignty and citizenship), a state court may also have jurisdiction to hear and determine it bindingly.

The right being a substantive one and the remedy delineated and supplied, this Court, having jurisdiction, must hear and determine and bindingly decree the rights of the parties before it under the circumstances. That is exactly why Congress established and ordained this Court. That this case may be litigated in a state court or that the docket of this Court is congested, or that litigation floods here, is no answer, begs the question, and is no excuse for us to refuse to exercise the judicial power vested in us by the Congress, the Constitution, and the people of the United States, among the latter of which, incidentally, are these plaintiffs. That is a part of government of, by, and for the people. With such statutory sanction, defendant's apparent endeavor· that this case be tried in a state court is reduced to a shadow. The jurisdiction of this Court is not governed by statistics, or the momentum of cases here.

Plaintiffs, being citizens of both sovereignties, have a right to be heard in either court; in any event they have a right to be heard here; and here they should be heard. This Court cannot abdicate its authority or duty to a state court. Suydam v. Broadnax, 14 Pet. 67, 39 U.S. 67, 10 L.Ed. 357; President, Directors and Company of the Union Bank of Tennessee v. Vaiden [Jolly's Adm'rs], 18 How. 503, 506, 59 U.S. 503, 506, 15 L.Ed. 472; Chicago & N. W. Ry. Co. v. Whitton Adm'r, 13 Wall. 270, 80 U.S. 270, 20 L.Ed. 571; Chicot County v. Sherwood, 148 U.S. 529, 13 S.Ct. 695, 37 L.Ed. 546; McClellan v. Carland, 217 U.S. 268, 30 S.Ct. 501, 54 L.Ed. 762; Kline v. Burke ·Const. Co., 260 U.S. 226, 43 S.Ct. 79, 67 L.Ed. 226, 24 A.L.R. 1077.

We can no more refuse to hear a case where there is diversity, as here, than we can refuse to hear any other case arising under the. Supreme Law of the Land. A United States court must hear a· United States citizen where there is jurisdiction such as is here present. Section 1332 of our Judicial Code, 28 U.S.C. § 1332, 28 U.S.C.A. § 1332, carries out the constitutional right of a citizen of one state to sue a citizen of another state·in this Court.

 Defendant urges that the state court with jurisdiction of this case is a fair court; besides not saying that this is also a Court of Justice, defendant forgets that plaintiffs are not only citizens of Louisiana but also are citizens of these United States.[13]

"Every citizen of a State is subject to two distinct sovereignties, having concurrent jurisdiction in the State,—concurrent as to place and persons, though distinct as to subject-matter. Legal or equitable rights, acquired. under either system of laws, may be enforced in any court of either sovereignty competent to ·hear and determine such kind of rights and not restrained by its constitution in the exercise of such jurisdiction. Thus, a *legal* or equitable *right acquired under State laws, may be prosecuted* in the State Courts, and *also, if the parties reside in different States, in the· Federal Courts."* Claflin v. Houseman, 93 U.S. 130, 136, 23 L.Ed. 833, 838. (Emphasis ours.)

Starting from the sound proposition that a controversy must exist in this action before this Court may exercise its judicial power, defendant then culls language from a web of numerous inapposite decisions dealing with assignments to confer jurisdiction, realignment of parties litigant, separable controversy removals, etc., and endeavors to syllogize them in its favor. ·Its syllogisms, when dissected or stripped of their illusory veil and the decisions cited from actually put in proper focus, do not syllogize. As stated in Cushing v. Mary-

13. "All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside." Amend. XIV, § 1, U. S. Constitution.

land Casualty Company, 5 Cir., 1952, 198 F.2d 536, "[defendant's] contentions over-inflate a relatively simple proposition with apparent, but unreal, technical problems." 198 F.2d 539.

We have seldom seen so dense a legal smoke screen thrown out in an attempt to create a complex and involved legal question where none exists. The Acts of Congress, above quoted, 28 U.S.C, §§ 1332, 1391, 28 U.S.C.A. §§ 1332, 1391, are clear enough. An attempt is made to raise a legal question by tacking adjectives to the word "controversy" as used in the first-quoted Act and to the word "Controversies" as used in our Constitution; or, by substituting for the word "controversy" or "Controversies" such phrases as "principal purpose" or "primary and controlling matter in dispute"; thus stepping the question out of character into nonanalogous fields, all in the face of well-established jurisprudence in point. Having executed this coup d'essai, tenuous arguments are built atop a foundation that is simply not the statute from whence argument is professed. This is legal fog.

The issuance of a public liability policy is not—in fact and in law, far from—an assignment. It does not *assign* the rights of the insured to the injured party. Who will be the injured party at the time of issuance of the policy is certainly unknown. That right of the insured is *subrogated* to the injured by operation of law. New Amsterdam Casualty Co. v. Soileau, 5 Cir., 167 F. 2d 767, 6 A.L.R.2d 128; certiorari denied 335 U.S. 822, 69 S.Ct. 45, 93 L.Ed. 376; Cushing v. Maryland Casualty Company, 5 Cir., 1952, 198 F.2d 536.

"Subrogation is not assignment." City of New Orleans v. Gaines' Adm'r, (City of New Orleans v. Whitney), 138 U.S. 595, 11 S.Ct. 428, 431, 34 L.Ed. 1102.

Besides, there is no question of assignment here.

The removal cases cited by defendant in its analogies were concerned with "separability" of controversy or controversies, as was the requirement under the law then. Cf. American Fire & Casualty Co. v. Finn, 341 U.S. 6, 71 S.Ct. 534, 95 L.Ed. 702, 19

A.L.R.2d 738. There is no question of removal in this case. Similarly, there is no question of realignment of the parties. The sole issue here being whether or not a controversy exists between plaintiffs and defendant.

For the reason that Louisiana has a direct-action statute, the jurisprudence built around the laws of those states having no direct-action statute, regarding the controversy, etc., between insurer and injured is most inapposite. Considerations which are decisive here, under the direct-action statute and the public policy of this State, must be different there, where none exists. "That the remedy may not exist in states other than Louisiana is not a tenable objection." Cushing v. Maryland Casualty Company, 5 Cir., 1952, 198 F.2d 536, 539.

The insured (alleged tort-feasor) and the insurer (defendant) are bound to plaintiffs in this action in solido by statute. Plaintiffs, under Louisiana substantive law, might have sued either the insured, or the insurer—as was done—, or both. La.Act 541 of 1950; cf. La.Act 542 of 1950 with the facts of this case.

Being the substantive law of this state, the direct-action statute must be given effect in this Court. Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487; Missouri, K. & T. Trust Co. v. Krumseig, 172 U.S. 351, 19 S. Ct. 179, 43 L.Ed. 474.

Plaintiffs, having chosen to sue, without reservation, the insurer alone, completely waive their rights against the insured.

This is not a fictitious suit. It was not gotten up between plaintiffs and defendant for the purpose of settling questions not involving them or upon which others have any property depending. It was not amicably instituted; nor is it amicably conducted. All necessary and indispensable parties are before the Court. Defendant is not a formal or unnecessary party; the insured is not a necessary or indispensable party.

This is not a feigned, possible, or conjectural controversy; it is a real dispute, concerning some matter of substantive right.

It is an actual, real, and substantial controversy where there is a real and adverse conflict of interests.

The parties do not seek a determination of abstract questions or issues formed for the purpose of seeking legal advice or an advisory opinion from this Court without real parties or a real case. This is not a hypothetical, or abstract, or moot, or. academic controversy. It is a genuine controversy.·

The parties, at least the plaintiffs, want a trial on issues of fact and law, the resolution of which, one way or the other, will be important to, and finally binding on, both sides.

While there is no answer filed of record; there may be a dispute or controversy on questions of fact and also questions of law, for all of which this Court was ordained and established and vested with judicial power to bindingly resolve for. these citizens of different states.

This action, being the proper subject of a compromise between plaintiffs (legal subrogees) and defendant, is the subject of an action at law, and, as such, is a controversy within the intent and meaning of the above-quoted passage from Section 2, Article III, of our Constitution, and the above-quoted passages from Sections 1332 and 1391 of our Judicial Code.

The judgment in this action, either way, will neither be a mere form nor a nullity. This proceeding is far from a contempt of Court or reprehensible in any manner. United States citizens have a right to United States courts.

It has been suggested to us, by competent authority, that this direct-action statute prevents circuity of actions, by permitting a plaintiff to litigate his cause of action directly against the insurer alone, up to the limits, and within the legal provisions, of the policy. We accept and endorse this as most logical; besides, we are unable to whittle away the definite purpose of the statute. It is best to try the entire matter once, and finally. Cf. Milwaukee Mechanics Inc. Co. v. Davis, 5 Cir., 198 F.2d 441.

 Defendant contends, and argues with legal legerdemain, that the Louisiana direct-action statute expands the jurisdic-tion or judicial power of the federal courts. Nothing, when fully analyzed, could be more incorrect. It is not the direct-action statute but the diversity of citizenship between these citizens of different states which extends the judicial power of this Court to hear their controversy. See, Art. III, § 2, U.S.Const.; 28 U.S.C. §§ 1332, 1391, 28 U.S.C.A. §§ 1332, 1391.

·The direct-action statute of Louisiana does not say that all insurance corporations shall be regarded as non-residents or that all shall be regarded as residents of Louisiana, for, in either case, that would be an attempt, in the former to extend, or in the latter to limit, our jurisdiction. Southern R. ·Co. v. Allison, 190 U.S. 326, 23 S.Ct. 713, 47 L.Ed. 1078. Nor does the direct-action statute of Louisiana say that it must be sued out· or upon only in federal courts or only in Louisiana state courts. Such provisions would also be obviously inefficacious as a denial to citizens of access to their· courts. Chicago and N. W. Railway Company v. Whitton's Adm'r, 13 Wall. 270, 80 U.S. 270, 20 L.Ed. 571. Plaintiffs' cause of action does not depend on the existence of federal courts.

Defendant may remain a Pennsylvania corporation. (a Pennsylvania citizen) and qualify to do business here; but, it must, being under the protection of Louisiana laws, assume the obligations of Louisiana laws, which do not discriminate among insurers. Domestic, foreign, or alien ·insurance corporations are treated alike in this State. Or, defendant may organize under Louisiana laws and assume the obligations and advantages, if you will, of Louisiana citizenship, and so prevent federal jurisdiction in suits by Louisiana citizens against it on its policies. See, Buxton v. Midwestern Ins. Co., D.C., 102 F.Supp. 500.

 Defendant was not compelled to come to Louisiana to· do business. Defendant was not compelled, after it voluntarily came here to do ·business, to issue a policy to Mrs. Spainhour. Cf. California State Automobile Ass'n Inter-Insurance Bureau v. Maloney, 341 U.S. 105, 71 S.Ct. 601, 95 L.Ed. 788. Defendant, after voluntarily issuing and delivering its policy to Mrs.

Spainhour, did not do .so gratuitously; it was *compensated* therefor. Being compensated to assume this· risk before it happened, it must assume it now that· it did happen. Defendant must take the bitter with the sweet. The direct-action statute "* * * should be liberally construed to accomplish its obvious purpose, which is to afford an injured person a direct action against a *compensated* insurer who has assumed ultimate liability." Cushing v. Maryland Casualty Company, 5 Cir., 1952, 198 F.2d 536, 537, 538. (Emphasis ours.)

So, again, entirely independent of all that we have said above, defendant's motion and arguments are foreclosed by the fact that, *prior* to the issuance and delivery of its policy to Mrs. Spainhour, to the accident complained of, to the filing of this suit, it had filed with the Secretary of State of Louisiana, voluntarily, its "consent to be sued", pursuant to the provisions of Louisiana law. Cushing v. Maryland Casualty Company, 5 Cir., 1952, 198 F.2d 536.; Fisher v. Home Indemnity Company 5 Cir., decided June 30, 1952, 198 F. 2d 218; Buxton v. Midwestern Ins. Co., D. C., 102 F.Supp. 500.

Plaintiffs have a case against defendant and the latter has "Controversies" with plaintiffs as to whether or not Spainhour was negligent in the operation of the automobile and, if so, then as to the extent of plaintiffs' damages.

Jurisdiction is well fastened in this case.

Defendant's motion to dismiss, in all its phases, must be, and it is, hereby overruled and denied. · Defendant is allowed twenty days to answer.

So ordered.